[No. 17559. Department Two. March 9, 1923.]

C. E. RUSSELL, *doing business as Russell Mill Company, Appellant,* v. MUTUAL LUMBER COMPANY, *Respondent.*[1]

LOGS AND LOGGING (3)—SALES OF TIMBER—CONTRACT—CONSTRUCTION. There was a sale of all cedar timber on the lands described in a lease and a contract whereby the lessor agreed to deliver all the cedar timber logged on or off the leased lands, for operating "the mill of the first party at or near T. and near said shingle mill;" the contract further providing that the contract and lease shall continue until all cedar upon the lands which are being logged to the sawmill shall be exhausted, unless it is impracticable or unprofitable to log the same.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered July 5, 1922, upon sustaining a demurrer to the complaint, dismissing an action on contract. Reversed.

*P. C. Kibbe* and *Vance & Christensen,* for appellant.
*Troy & Yantis,* for respondent.

PEMBERTON, J.—In this action appellant asked damages against respondent for its failure and refusal to supply cedar shingle timber to appellant under a certain contract agreement between respondent, designated party of the first part, and Edgar J. Bordeaux,

[1]Reported in 213 Pac. 461; 216 Pac. 891.

designated as party of the second part, dated the 18th day of October, 1913. The complaint alleges that Bordeaux erected a shingle mill upon certain property described in the contract, and thereafter sold, transferred and assigned his interest in the mill property and contract to appellant. The material portions of the contract, so far as this controversy is concerned, are as follows:

"Witnesseth, that for and in consideration of the agreements of the party of the second part hereinafter contained, the said party of the first part does hereby let and lease to party of the second part a parcel of land together with buildings on said land belonging to it, beginning at the east end of the log pond belonging to the mill of said party of the first part, at or near Tenino, Thurston county, Washington (Then follows description of the real property leased), at a yearly rental of Two Hundred and Forty ($240.00) Dollars.

. . . .

"The party of the second part agrees to construct upon the said land a complete shingle mill or shingle manufacturing plant of about one hundred and twenty-five thousand (125,000) shingles capacity in ten hours, and the party of the first part hereby agrees to furnish to party of the second part, at the said shingle mill for his use only, in logs or bolts, all the cedar timber logged on or off the lands which may hereafter be logged upon for running and operating or the making of lumber at the saw mill of the party of the first part at or near Tenino, and near the said shingle mill, and the said party of the second part hereby agrees that he will, at the said shingle mill, manufacture the said material . . .

"It is further agreed by the parties hereto that the said cedar timber is to be delivered to the said party of the second part in the said log pond aforesaid. . . (Then follows a provision for the division of the manufactured product between the parties to the contract.)

"The party of the first part agrees that it will endeavor to furnish enough cedar timber, either in logs or bolts to keep the mill running as much as possible, and the party of the second part .agrees that he will keep the mill running in the manufacturing of said shingles  as constantly as possible.  .  .

"It is further mutually agreed between the parties hereto that the parcel of land hereby leased as aforesaid shall be used for no purpose except that connected with the shingle manufacturing business, and for the purpose of furthering said business.  .  .

"It is further mutually agreed that should either party hereto sell or dispose of its business or holdings, that in said sale and disposal it will provide for the protection of the interests of the other party hereto under this contract and agreement.

"It is further mutually agreed that the obligations of this contract and the terms of the said lease shall be and continue until all cedar upon. the lands which are being or may be logged to the saw mill of party of the first part shall be exhausted.  .  .

"It is hereby agreed by party of the second part that he will commence construction of said shingle mill within one week and complete same as quickly as practicable.

"It is hereby mutually agreed that any cedar standing or being upon any of the lands so to be logged as aforesaid, which is so situated as to make it impracticable or unprofitable to log the same, the party of the first part shall not be required to furnish the cedar so situated to party of the second part."

It is alleged in the complaint

"that the conditions prescribed in said contract as to be performed on the part of the said E. J. Bordeaux looking to the erection of factories and like facilities for the execution of said contract were faithfully performed by him and to the satisfaction of defendant; . . . that all the facilities, plant and the like, so constructed and invested by said E. J. Bordeaux in accordance with the letter and spirit of said contract, were by plaintiff, with the full knowledge and consent

of the defendant, purchased from said Edgar J. Bordeaux . . . and to which have been added by this plaintiff since the acquirement of the same, many betterments, improvements and facilities looking to the complete, expeditious and satisfying performance of said contract on the part of the plaintiff. That the plaintiff's mill and plant are located and were constructed with special reference to the timber owned by the defendant" and described in the contract.

Appellant further alleges in the complaint that

"On or about the —— day of July, 1919, plaintiff was informed by defendant that for reasons satisfactory to itself it would not furnish for its manufacture any more cedar timber under the provisions of said contract, and from and after the prescribed time defendant did not furnish, refused and still refuses to furnish, any cedar timber under the terms of the contract to the plaintiff; . . . that plaintiff, for the considerations above set out, was compelled to and did close down his manufacturing plant on or about the 29th day of September, 1920, . . ."

The complaint further alleges:

"(4) That it was stated, understood and agreed between the parties to the contract, prior to the execution of the contract, and was stated, understood and agreed at the time of its execution, and if the same is not carried forward and expressed in the contract the failure to express the same was by mutual mistake; that all the timber then owned by parties of the first part to said contract, at or near its mill at Tenino, was subject of the contract; and that all of said timber so owned by first party and then being logged, and as the same should in future be logged by first party, the cedar bolts or logs should be delivered, and must be delivered, to the second party for the maintenance of his mill.

"(5) That some time but shortly after the repudiation of the contract of the first party, as hereinafter described, the said first party moved its mill and manufacturing plant from its location at or near Tenino, to

a point in the community known as Bucoda, said state and county, about three and one-half miles difference from the point of its location at the time of making of the contract; and since said moving of its plant has continued its logging operations upon the timber lands owned by it at the time of making the contract at or near Tenino, and has since continued to dispose of and is now disposing of the cedar product in its said logging to some one other than this plaintiff and upon the identical terms contemplated upon the contract sued upon.

" (7) That in reliance upon the terms of the contract the plaintiff invested his money, time and experience in his plant for the execution of the contract; and that because of repudiation by defendant as already described, and the inability to manufacture the product for which the said plant was designed and established at a profit under general market conditions that said plant has been standing idle with all fixed charges such as insurance, depreciation, interest and the like, steadily continuing to his loss and damage as hereinbefore described; that the action of defendant, by reason of the things aforesaid, had damaged the plaintiff in the total sum of $168,750 as above set out.

·" (8) That his plant being isolated, as heretofore described, and being constructed primarily for the use and benefit of the contract mutually made between the parties hereto, and there being no timber naturally tributary to his mill and mill site, and if the defendant shall not carry out its contract he shall be compelled to dismantle his plant, which is of the fair and reasonable cost of $30,000; and that if the same shall be dismantled it and its machinery will have to be disposed of as junk and will not realize plaintiff to exceed $5,000 in cash, and that thereby plaintiff will be damaged in the sum of Twenty-five Thousand ($25,000) Dollars."

The case comes before this court on a judgment dismissing the action, after the court had sustained a demurrer to the second amended complaint of appellant.

Appellant contends that, under a fair and reasonable construction of the contract, it is entitled to all the cedar timber owned and logged by respondent near Tenino, and the fact that respondent moved its lumber mill three and one-half miles from Tenino does not relieve it from furnishing the cedar timber to appellant, since the complaint alleges that respondent is logging the same lands referred to in the contract.

It is the contention of respondent that it was only required to furnish to appellant such cedar as was cut in the logging of lands which were logged to the particular mill mentioned in the contract near Tenino. When, for any reason, the timber was not being logged to that mill, respondent was under no obligation to furnish cedar to appellant, relying upon the provision in the contract as follows:

"The party of the first part hereby agrees to furnish to the party of the second part at the said shingle mill, . . . all the cedar timber logged on or off the lands which may be hereafter logged upon for running and operating or the making of lumber at the saw mill of the party of the first part at or near Tenino, and near the said shingle mill."

It is insisted that this language is unambiguous and that the demurrer to the amended complaint was properly sustained, following the rule laid down in the case of *Kanaskat Lumber & Shingle Co. v. Cascade Timber Co.,* 80 Wash. 561, 142 Pac. 15, wherein the construction of a similar contract was under consideration. The contract in that case provided that

"The party of the first part agrees to furnish to the party of the second part all the cedar logs cut by it (from certain lands), . . . and further agrees to cut cedar logs as they are reached in the logging operations of the party of the first part in said township and to deliver the logs cut to the party of the second part . . .

"It is further agreed that this agreement shall be in force for a period of ten (10) years from the date hereof."

There was a provision in the contract against the party of the second part assigning its interest without the consent of the party of the first part. There was no provision in the contract against the party of the first part, the Cascade Timber Company, disposing of its business.

The Cascade Timber Company, having disposed of its business, ceased to deliver logs, and an action was brought to recover damages for violation of the contract. Appellant desired to show that it was the intention of the parties that respondent was to furnish sufficient cedar to keep the mill in operation. The court held that, under the terms of the contract, there was no obligation on the part of the timber company to deliver the cedar, for the reason that it was only to deliver the cedar as it logged certain lands, and having disposed of its interest and discontinued its logging of such lands, it was under no obligation to the plaintiff. With reference to the rule of the construction of the contract, the court said:

"The duty of courts, when construing questioned contracts, to search out the intention of the parties, is well established, but that duty arises out of an ambiguity or omission that demands the reception of testimony to illustrate their intent, or to harmonize apparent conflicts. There is a presumption of finality which attends all written contracts and courts will not deliberately raise doubts or conjure ambiguities for the mere pleasure of construing them. *Fairbanks Steam Shovel Co. v. Holt & Jeffery,* 79 Wash. 361, 140 Pac. 394. Nor will the fact that a party has made a hard or improvident bargain warrant the court in binding the other party to terms raised by construction or implication."

This was the only ground on which the action was dismissed. The contract in other respects was sustained by the court as shown by the following language:

"Appellant did not agree to take only such logs as respondent *might* deliver. Respondent bound itself to deliver *all* the cedar logs cut in its logging operations, for which a fixed price was to be paid. The contract was mutual. This would not be doubted, we apprehend, if appellant were suing for damages for failure or refusal to deliver logs that had been cut and sold to some third party."

In considering the contract as a whole, we find "that the obligations of this contract and the terms of the said lease shall be and continue until all cedar upon the lands which are being or may be logged to the saw mill of party of the first part shall be exhausted." The contract further provides "that any cedar standing or being upon any of the lands so to be logged as aforesaid, which is so situated as to make it impracticable or unprofitable to log the same, the party of the first part shall not be required to furnish the cedar so situated to party of the second part." The contract also provides that "should either party sell or dispose of its business or holdings, that in said sale and disposal it will provide for the protection of the interests of the other party hereto under this contract and agreement."

It would seem that, under these provisions, appellant was entitled to all the cedar upon the lands then being logged, or intended to be logged, to the sawmill of the party of the first part.

In considering the contract as a whole, we are of the opinion that the contract is one of sale of the cedar timber therein described, and the provision in the contract does not restrict the sale to the timber logged for running and operating or the making of lumber at the

sawmill at or near Tenino, since this expression is only descriptive of the location of the mill that was then being operated by respondent, and respondent could not avoid the terms of its contract by changing the location of its mill, if in fact it continued to log the identical land in contemplation at the time of the execution of the contract, excepting, however, such lands as were impracticable or unprofitable to log to the mill at or near Tenino, as provided in the contract.

We find that the second amended complaint states a cause of action. The decision of the lower court is reversed, and the case remanded with directions to overrule the demurrer.

FULLERTON, TOLMAN, and PARKER, JJ., concur.

### ON REHEARING.

[*En Banc.*    August 9, 1923.]

PER CURIAM.—Upon a hearing *En Banc,* a majority of the court adhere to the opinion heretofore filed herein, and the judgment of the trial court is therefore reversed and remanded as therein directed.