[No. 18909. Department Two. May 18, 1925.]

C. E. RUSSELL, *doing business as Russell Mill Company, Appellant,* v. MUTUAL LUMBER COMPANY, *Respondent.*[1]

ESTOPPEL (64)—PLEADING AS DEFENSE—SCOPE AND EXTENT. An estoppel to maintain an action by reason of contrary pleadings and admissions in a former action, not pleaded or before the court, cannot be raised by demurrer or motion to strike the complaint.

LOGS AND LOGGING (3)—SALE OF TIMBER—CONTRACT—DEFINITENESS. An agreement to sell and deliver parts of certain timber which the seller contemplated purchasing is valid, and not objectionable for want of subject-matter.

SAME (3). A contract to sell and deliver timber "near and tributary" to the buyer's mill is not void for indefiniteness.

REFORMATION OF INSTRUMENTS (2)—MATTERS SUBJECT TO REFORMATION—DESCRIPTION. A contract to sell and deliver timber "near and tributary" to the buyer's mill which the seller was to subsequently acquire, is not so indefinite that it may not be reformed; and a complaint for reformation thereof is therefore not demurrable.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered July 1, 1924,

[1]Reported in 236 Pac. 96.

upon sustaining a demurrer to the complaint, dismissing an action on contract.   Reversed.

*Vance & Christensen* and *P. C. Kibbe,* for appellant.
*Troy & Yantis,* for respondent.

FULLERTON, J.—The questions presented on this appeal, in some of their aspects, were before this court in the case of *Russell v. Mutual Lumber Co.,* 124 Wash. 109, 213 Pac. 461, 216 Pac. 891.   It is stated in the briefs of counsel, although it does not otherwise appear from the record, that, after that cause had been remanded by this court, issue was taken on the allegations of the complaint and a trial entered upon, which was terminated by a voluntary nonsuit taken by the plaintiff therein.   Following the entry of the nonsuit, the plaintiff instituted the present action upon the contract involved in the prior action.   On its appearance in the action, the defendant lumber company moved to strike certain of the allegations of the complaint on the ground that they were "sham, frivolous, incompetent, irrelevant and immaterial, and are a departure and variance, and have been determined adversely to plaintiff" in the former action.   On the hearing of the motion, the trial court treated it, on the stipulation of the parties that he might so do, as a demurrer as well as a motion to strike, and at the conclusion of the hearing granted the motion and sustained the demurrer.   The plaintiff elected to stand on the complaint, whereupon the court dismissed the action with prejudice.   The present appeal is from the judgment of dismissal.

The respondent lumber company, in its arguments, treats the present action as if it were a continuation of the former one.   It argues that the present complaint is contradictory of the former complaint; that

the appellant now takes a position in conflict with the position taken by him in his former complaint; and contends that he cannot now be heard to gainsay what he has before thus solemnly admitted. Doubtless, at some stage of the proceedings the questions here suggested will be open to the respondent, but it may be said here, once for all, that they are not now before us. As the case here appears, the rights of the appellant must be determined from the allegations of its complaint as they appear in the present action, disregarding everything that has gone before. Estoppel by acts, estoppel by admissions, and estoppel by *res judicata* are affirmative defenses to an action, to be pleaded and proved as such—they are not matters to be inquired into when the sole question before the court is whether or not the plaintiff has alleged improper matter in his complaint, or has failed to state therein facts sufficient to constitute a cause of action.

The complaint of the plaintiff, omitting the formal parts, is in the following words:

"1. That he is now and at all times herein mentioned was a resident of said county and state, and conducted and now conducts a shingle manufacturing business under the business name of Russell Mill Company, having done all things necessary or required to be done in the use of such name and to conduct such business; that defendant is a corporation organized and existing under the laws of said state, having an office for the transaction of business and doing business in said county and state at all times herein mentioned, conducting largely the business of manufacturing lumber and timber products.

"2. That on or about October 18, 1913, defendant, being the owner of a certain timber tributary to its manufacturing plant at or near the town of Tenino, in said county and state, *and intending to acquire and to log certain other timber naturally tributary to its said plant, the said timber so owned and to be later acquired* carrying a considerable percentage of cedar, made and

entered into a certain contract in writing with Edgar J. Bordeaux, a copy whereof is hereto attached and marked Exhibit 'A,' which will be hereafter referred to as the contract; that thereafter with the full knowledge and consent of defendant and on or about the 28th day of March, 1919, the said Edgar J. Bordeaux duly assigned, for a good and valuable consideration, the said contract 'A,' with all rights and responsibilities therein to the plaintiff herein, who is now and ever since the said assignment has been the owner thereof; that following said assignment this plaintiff proceeded to and with the full, complete and continued execution of the covenants and agreements upon his part assumed thereunder until the date hereinafter mentioned, at all times being fully prepared to, able to and holding himself in readiness to, and now so holding himself in readiness and being able and prepared to proceed with the full and complete execution of the said contract according to its letter and spirit; that the conditions prescribed in said contract as to be performed on the part of said Edgar J. Bordeaux looking to the erection of factories and like facilities for the execution of said contract were faithfully performed by him and to the satisfaction of defendant; that all the facilities, plant and the like, so constructed and invested by said Edgar J. Bordeaux in accordance with the letter and spirit of said contract were faithfully performed by him to the satisfaction of defendant; that all the facilities, plant and the like, so constructed and invested by said Edgar J. Bordeaux in accordance with the letter and spirit of said contract, were by plaintiff, with the full knowledge and consent of defendant, purchased from said Edgar J. Bordeaux at the time of the above mentioned assignment, and now, and ever since said purchase, have been the property of this plaintiff, and to which have been added by this plaintiff since the acquirement of the same, many betterments, improvements and facilities looking to the complete, expeditious and satisfying performance of said contract on the part of plaintiff.

"3. That the plaintiff's mill and plant are located and were constructed with special reference to the

timber owned by defendant *and to be subsequently acquired* and logged by it under the terms and conditions set out in Exhibit 'A,' and that the said timber . consisting, as above said, of a considerable percentage of cedar is practically the only cedar timber conveniently and reasonably tributary to plaintiff's plant and site; that while plaintiff's plant and mill were occupied under the terms of the contract, and running at full capacity in order to comply with the provisions of the contract requiring plaintiff to receive and manufacture the percentage of cedar that might be found by defendant among its cut in the ordinary course of logging, the plaintiff having no other cedar timber contracted for or conveniently tributary to his said plant by reason of the fact that under the terms of said Exhibit 'A' he was compelled to hold all his resources of manufacture subject to handling the cedar timber of defendant; and on or about the............day of July, 1919, plaintiff was informed by defendant that for reasons satisfactory to itself it would not furnish for its manufacture any more cedar timber under the provisions of contract 'A'; and from and after the prescribed time defendant did not furnish, refused and still refuses to furnish, any cedar timber under the terms of the contract to the plaintiff, or any timber at all save as the same might be purchased by the plaintiff in the open market; that by the terms and conditions of contract 'A' the certain cedar timber logged off by defendant from the areas mentioned in the contract were required to be, and was until the time of repudiation just before set out, to be delivered to plaintiff at his plant located as described in the contract free of all cost to him of loading, transportation or unloading, and that as appears by the terms of the contract the manufacture of the said cedar timber so delivered was to be the duty of plaintiff, as was the marketing of same, and the total market price received for said manufactured product was to be, and was until said time of repudiation, divided share and share alike between plaintiff and defendant; that following the failure and refusal of defendant to deliver timber to plaintiff in accordance with the terms of the contract

plaintiff continued the operation of his factory plant, buying cedar timber as best he could in the open market and at current market rates, at times from defendant itself and at other times wherever the said timber might be reasonably and conveniently obtained, at no time releasing defendant from any responsibility or obligations assumed by it under the terms and conditions of the contract; that under the variable and changing market conditions, accompanying the purchase of timber and the engagement of labor for shingle manufacturing purposes, plaintiff was unable to continue his operations of his manufacturing plant at a profit on account of the failure and refusal of defendant to furnish timber as contemplated by the contract, free of transportation, loading and unloading charges to plaintiff at his plant, and that immediately following the repudiation by defendant the price of such cedar timber as plaintiff was able to procure conveniently and reasonably for the service of his plant, and the price of labor for the manufacture of the said timber, increased and continued to increase so that the plaintiff could not with reasonable propriety or at reasonable cost, on account of the location of his plant, manufacture, save to his great loss and damage, in the amounts hereinafter set forth with more particularity and detail; that plaintiff, for the considerations above set out, was compelled to and did close down his manufacturing plant on or about the 29th day of September, 1920, since which time on account of the cost of labor and material for manufacture he has been unable to operate the same, his loss and damage in amounts to be set forth with particularity and detail hereinafter. In all times mentioned in the complaint the lands embraced in plaintiff's contract were being logged off by defendant, and that since defendant's abandonment of its contract with plaintiff it has continued to log the said lands; that logging of said lands described heretofore as continued by defendant has been done under a contract similar in terms and effect, though with another party, to those upon which your plaintiff sues.

"4. That it was stated, understood and agreed be-

17—134 WASH.

tween the parties to the contract, Exhibit 'A,' prior to
the execution of the contract, and was stated, under-
stood and agreed at the time of its execution, and if
the same is not carried forward and expressed in the
contract the failure to express the same was by mutual
mistake; that all the timber then owned tributary *and
thereafter to be acquired by the parties of the first
part to said contract,* at or near its mill at Tenino was
subject of the contract; and that all of said timber so
owned tributary, *and thereafter to be acquired and
logged by first party,* and then being logged, and as
the same should in future be logged by first party, the
cedar bolts or logs should be delivered, and must be
delivered, to the second party for the maintenance of
his mill.

"5. That it is and was the custom among milling
and lumbering interests in the community in which the
parties resided at the time of the making of the con-
tract, and in Western Washington, to build mills or
factories expecting to log timber then owned *and
thereafter to be acquired naturally tributary to such
mill or mills,* and it was the intention of defendant and
the expectation of the plaintiff's predecessor that de-
fendant's mill was to be retained for said purpose at
its then location while the logging railroad was to be
built out into the timber then owned *and thereafter to
be acquired* that was naturally tributary to the said
mill, was logged thereto, *and the contract in con-
troversy was so construed and various pieces, bodies
and tracts of timber acquired by defendant after the
making of said contract was so logged to defendant's
said mill and the cedar logged to plaintiff's mill during
the plaintiff's ownership,* and that of his predecessor
in interest, all under the exact terms, provisions and
conditions of the said contract. That if the immedi-
ately outlined contractual conditions and suggestions
are not set out and expressed in the contract the omis-
sion was by the mutual mistake of the parties, their
subsequent action as outlined being the practical con-
struction placed upon the said contract.

"6. That some time but shortly after the repudia-
tion of the contract of the first party, as hereinafter

described, the said first party moved its mill and manufacturing plant from its location at or near Tenino to a point in the community known as Bucoda, said state and county, about three and one-half miles difference from the point of its location at the time of making of the contract; and since said moving of its plant has continued its logging operations upon the timber lands owned by it at the time of making the contract at or near Tenino, and has since continued to dispose of and is now disposing of the cedar products in its said logging to some one other than this plaintiff and upon the identical terms contemplated upon the contract sued upon.

"7. That of all the timber in the vicinity of Tenino owned by defendant at the time of the making of the contract what remains now and remained at the time of the institution of this suit is inconsiderable; that the profits declared in this proceeding are the profits to which the plaintiff is and was entitled, and would in future be entitled to, from subsequently acquired timber, the acquirement of which was in the minds of both parties to the contract at the time of its making and was contemplated by both parties to be included in the contract, and was omitted therefrom by inadvertence and mutual mistake as hereinbefore set out.

"8. That under the terms and provisions of the contract with the facilities of manufacture purchased and supplied by plaintiff for handling the timber to be furnished him by defendant, plaintiff reasonably and conveniently expected to continue the operation of his plant in the manufacture of defendant's timber for a period of at least seven years and a half; that at the time of the repudiation of the contract by defendant, defendant owned and was in the course of logging cedar timber from areas described in the contract sufficient timber to keep plaintiff's plant in continuous and profitable operation for the said period of not less than seven and one-half years; that from the manufacture of said timber during said period plaintiff expected to make, and would in the ordinary course of business operations and manufacture have made, a

profit under the terms of the said contract of $168,-750.00; that the cost of plaintiff of the manufacture of the cedar timber delivered to his plant under the terms of the contract, while not a steady and consistent figure yet bore such a steady and consistent relation to the price of the manufactured product in the open market that the half of the total price received upon the open market represented, and would reasonably continue to represent a profit to plaintiff over and above his costs of manufacture of approximately 25 per cent.

"9. That in reliance upon the terms of the contract the plaintiff invested his money, time and experience in his plant for the execution of the contract; and that because of repudiation by defendant as already described, and the inability to manufacture the product for which the said plant was designed and established at a profit under general market conditions that said plant had been standing idle with all fixed charges such as insurance, depreciation, interest and the like, steadily continuing to his loss and damage as hereinbefore described; that the action of defendant, by reason of the things aforesaid, has damaged the plaintiff in the total sum of $168,750.00 as above set out.

"10. That his plant being isolated, as heretofore described, and being constructed primarily for the use and benefit of the contract mutually made between the parties hereto, and there being no timber naturally tributary to his mill and mill site, and if defendant shall not carry out its contract he shall be compelled to dismantle his plant, which is of the fair and reasonable cost of $30,000.00; and that if the same shall be dismantled it and its machinery will have to be disposed of as junk and will not realize plaintiff to exceed $5,000 in cash, and that thereby plaintiff will be damaged in the sum of Twenty-Five Thousand ($25,000.00) Dollars.

"Wherefore, plaintiff prays that he have judgment against defendant company in the sum of One Hundred Ninety-three Thousand Seven Hundred Fifty Dollars ($193,750.00), and that he may recover all of his costs and disbursements in the premises."

The material parts of the contract, referred to in the complaint as Exhibit ''A'' and attached thereto, will be found quoted in the opinion in the case cited, and need not be repeated here. The part of the complaint stricken are the parts we have italicized in the foregoing quotation. With these parts of the complaint stricken, the complaint was left substantially in the form of the complaint in the case of *Russell v. Mutual Lumber Co.*, 124 Wash. 109, 213 Pac. 461, 216 Pac. 891, and, we may say in passing, that if we were correct in holding that the complaint in that action stated facts sufficient to constitute a cause of action, the trial court was in error in sustaining the demurrer to this complaint. But we think the trial court was in error in striking these allegations from the complaint.

The argument in support of the ruling of the court, to quote from the respondent's brief, ''is a contract whereby the respondent was not selling timber in which it had any interest whatsoever, but was selling timber in which it had neither a present nor a potential interest,'' and is void for want of subject-matter. But we think this argument misinterprets the contract. It is true, there are cases which hold a sale of property void so far as not to furnish a foundation for an action in damages where the seller is without interest in the thing sold and the fact is known to the purchaser, but the courts are not unanimous even on this proposition. But this question need not be here determined, as we cannot conceive that the present transaction is a transaction of this sort. As alleged in the complaint, this is a transaction where the vendor agreed to deliver to the vendee parts of certain timber which it then contemplated purchasing and which it thereafter did purchase. Under the great weight of authority, as we understand it, this is a valid contract,

a breach of which will subject the party breaching it to an action in damages. A well considered case, sustaining the principle, is found in the respondent's own citations. We refer to the case of *Forsyth Mfg. Co. v. Castlen*, 112 Ga. 199, 37 S. E. 485, wherein the true rule is declared to be "that an executory contract for the sale of goods for future delivery is not invalid by reason of the fact that at its date the vendor had not the goods, and had not entered into any arrangement to buy them, and had no expectation of receiving them unless by going into the market and buying them."

Another argument is that the contract alleged is too indefinite for enforcement. But we cannot think this position tenable. The timber is referred to as timber near and tributary to the mill of the respondent, and timber naturally tributary thereto. This is sufficiently definite as against the objection of one of the parties to the contract.

The contract as written may be somewhat indefinite in its language as to the timber to be delivered, and it may be that it needs reformation in this respect before it can be held to include timber subsequently to be acquired. But the appellant seeks reformation as a part of his relief if the court adjudicates it insufficient in this respect. This is, however, a question primarily for the court of the first instance and will not be determined on this appeal. It is sufficient for us to say that the complaint is not subject to demurrer on this ground. In this jurisdiction a litigant may reform the contract sued upon and recover thereon in one action.

In our opinion, the trial court erred in sustaining the motion to strike, and in holding that the complaint did not state facts sufficient to constitute a cause of action. The judgment appealed from is therefore re-

versed, and the cause is remanded with instructions to overrule the motion and the demurrer.

TOLMAN, C. J., MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.