[No. 19899. Department One. May 28, 1926.]

C. E. RUSSELL, *doing business as Russell Mill Company (Ella M. Russell, as Executrix), Appellant,* v. MUTUAL LUMBER COMPANY, *Respondent.*[1]

[1] EVIDENCE (178)—PAROL EVIDENCE AFFECTING WRITINGS — AMBIGUITY AS TO SUBJECT MATTER. A contract to deliver all the cedar timber which is tributary to a certain mill or was being logged or would in the future be logged there, is ambiguous so as to admit oral evidence of the timber included.

[2] SAME (179)—PAROL EVIDENCE AFFECTING WRITINGS—SHOWING INTENT AS TO SUBJECT MATTER. Evidence that it was possible to log timber to a certain mill and to extend a railroad thereto at a reasonable expense does not tend to show that the timber in question was tributary to said mill or was intended to be logged at the time the contract therefor was made.

[3] REFORMATION OF INSTRUMENTS (6, 20)—MUTUAL MISTAKE—EVIDENCE—SUFFICIENCY. Mutual mistake in not including certain timber intended to be included in a logging contract is not sufficiently clear and convincing to warrant reformation of the contract, where the evidence was merely that it was "tributary" to the mill and could have been economically logged to the mill.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered February 1, 1926, dismissing an action on contract, upon granting a nonsuit, after a trial to the court. Affirmed.

[1]Reported in 246 Pac. 580.

*Vance & Christensen, Harry A. Rhodes,* and *P. C. Kibbe,* for appellant.

*Troy & Yantis* and *Poe, Falknor, Falknor & Emory,* for respondent.

BRIDGES, J.—This case has already twice been before this court. *Russell v. Mutual Lumber Co.*, 124 Wash. 109, 213 Pac. 461, 216 Pac. 891; *Russell v. Mutual Lumber Co.*, 134 Wash. 508, 236 Pac. 96.

The complaint is not very different from those which are fully set out in our previous decisions. It alleged that, on October 18, 1913, respondent, Mutual Lumber Company, entered into a written contract with a Mr. Bordeaux concerning the removal of timber. At that time, the respondent owned and had in operation a sawmill located near Tenino, in Thurston county, which we shall hereinafter refer to as "the Tenino mill." Running from that mill, it had constructed and had in operation a logging railroad extending into timber which it then owned. There was some cedar on those lands and respondent did not have any mill for the proper manufacture of that class of timber. The primal purpose of the contract was to have Mr. Bordeaux erect a shingle mill near the Tenino lumber mill and manufacture into shingles the cedar which the respondent would deliver to it. We will later give more of the terms of this contract.

The complaint alleged that, at the time of entering into the contract, the respondent not only owned the timber above mentioned, but intended to acquire and log certain other timber naturally tributary to the Tenino plant, which other timber carried a considerable percentage of cedar; that subsequently, and on or about March, 1919, Bordeaux sold his shingle mill and assigned his interest in the contract to the appellant, and that the latter and his predecessor in interest have

fully complied with the terms of the contract; that in July, 1919, the respondent notified appellant that it would not furnish him any more cedar timber, and on account thereof the appellant was required to shut down his plant, at his great loss.

It was further alleged that it was "stated, understood and agreed" between the contracting parties "that all the timber then owned tributary and thereafter to be acquired by the party of the first part [respondent] to said contract, at or near its mill at Tenino, was subject to the contract; and that all of said timber so owned tributary, and thereafter to be acquired and logged by the first party, and then being logged, as the same should in future be logged by the first party, the cedar logs or bolts should be delivered, and must be delivered to the second party for the maintenance of his mill," and if such agreement and understanding with reference to after-acquired timber was not expressed in the written contract, the failure so to do was a mutual mistake; that, after performing the contract for a certain period, the respondent dismantled its mill at Tenino and abandoned its logging railroad leading thereto, and constructed another mill at Bucoda, some four or five miles away, and built and put in operation another logging railroad into timber purchased by it subsequent to the entering into of the contract, but which timber was tributary to the Tenino plant and under the contract should have been conveyed thither, so that the appellant could obtain the cedar that was so logged. The complaint then alleges damage in a large sum and seeks recovery thereof.

The contract is set out in *Russell v. Mutual Lumber Co.*, 124 Wash. 109, 213 Pac. 461, 216 Pac. 891, heretofore mentioned, and we need not repeat it here. Its important provisions, so far as the questions involved here are concerned, are that,

" . . . the party of the first part [respondent] hereby agrees to furnish to the party of the second part at the shingle mill for his use only, in logs or bolts, all the cedar timber logged on or off the lands which may hereafter be logged upon for running and operating or the making of lumber at the sawmill of the party of the first part at or near Tenino, and near the said shingle mill. . . ."

It further provided

" . . . that the obligations of this contract . . . shall be and continue until all cedar upon the lands which are being or may be logged to the sawmill of party of the first part shall be exhausted,"

and that thereafter the second party may continue to maintain and operate his mill, purchasing timber therefor as he may. It was further provided that respondent was not required to log any cedar which was so located as to make it impracticable to log it.

It seems to be admitted that the contract was entered into, and that the respondent operated its mill at Tenino from its date in 1913 to some time in 1919, during all of which time such cedar as was logged was delivered to the appellant's mill. It was on the last named date that the respondent abandoned its Tenino mill and logging railroad connected therewith, and constructed its Bucoda mill and logging road; and thereafter no cedar was delivered to the appellant. Not only all of the timber which the respondent owned at the time of entering into the contract was logged to its Tenino mill and the cedar furnished to appellant, but also considerable timber which was purchased by respondent subsequently to entering into the contract. At periods between entering into the contract and abandoning the Tenino mill, the respondent purchased large tracts of timber to the south of Tenino and its old railroad, and to the east of Bucoda. The old logging railroad terminated at a point some three or four miles north of the

timber last mentioned. It is the cedar in this timber that is now in dispute.

The appellant produced some testimony tending to show the topography of the country lying between the woods end of the old logging railroad and the timber which was subsequently purchased and which is now in dispute. The respondent objected to any further like testimony, until appellant should introduce affirmative testimony to show that the original contract should be reformed so as to include the timber in dispute. The court sustained the objection, saying that "this contract will have to be reformed before any evidence of after-acquired timber can be considered in the case." Thereafter the appellant offered to prove the topography of the immediately surrounding country, and that the timber in question could be reasonably logged to the Tenino plant. He further offered to prove that the Skookum Railway & Logging Company had a logging railroad running from its plant near Tenino to a point near the timber which is now in dispute, and that respondent could have made arrangements to remove this timber over that logging road. Other offers were made which would show, or tend to show, that it was practicable to convey the timber in dispute to the Tenino mill. These offers the court refused, and granted a nonsuit, and thereafter judgment was entered dismissing the action.

It would seem that the trial court sustained objections to this class of testimony not because it was wholly immaterial, but because, before it could become proper, it was necessary that the contract be reformed, and that the reformation could be justified only on some positive testimony that, at the time of making the 1913 contract, it was the intention of the parties to it to include therein the timber in question. The appellant admitted he did not have any such testimony and

would not produce any, and insisted that such class of evidence was not necessary and that any ambiguities in the contract could be explained by the offered testimony, and also that a reformation of the contract could be had by showing the facts and circumstances surrounding its execution.

In *Russell v. Mutual Lumber Co.*, 124 Wash. 109, 213 Pac. 461, 216 Pac. 891, we held, in substance, that the respondent could not, at his pleasure, remove its mill and cease to furnish logs to the appellant, and that the latter "was entitled to all the cedar upon the lands then being logged, or intended to be logged, to the sawmill of the party of the first part," at Tenino. In other words, we held that the respondent must convey to its mill at Tenino timber which at the time of entering into the contract was being logged, or timber which it was then intended should be logged to that point. In *Russell v. Mutual Lumber Co.*, 134 Wash. 508, 236 Pac. 96, a demurrer to the complaint was sustained by the lower court. It was there alleged that, at the time of entering into the contract, it was agreed that the respondent intended thereafter to acquire other timber which would be tributary to the Tenino plant, and that it was the intention and understanding that such timber should be logged to that plant. On appeal, we held that the trial court erred in striking those allegations to the effect that it was the intention of the parties that any timber thereafter purchased by the respondent, which was tributary to the Tenino plant, should be conveyed to that plant and the cedar delivered to the appellant. We also there said that the contract, as written, was somewhat indefinite as to the timber to be delivered, and that it might need reformation before it could be held to include timber subsequently acquired.

Apparently, the testimony which was rejected by the trial court was offered for one of two purposes. First,

conceding the original contract to be ambiguous, the offered testimony, it was claimed, was competent and sufficient to explain the intention of the parties as to what timber was intended to be delivered to the appellant; this for the purpose of explaining an ambiguity in the contract. And, secondly, that it was competent to prove facts sufficient to justify a reformation of the contract to include the timber in dispute, on the ground that it was the intention to include it, but by mutual mistake it had been left out.

We need not cite authorities to support the statement that oral testimony concerning the surrounding facts and circumstances attending the execution of a contract may be received for the purpose of showing what the parties intended, where the contract in that regard, upon its face, is ambiguous. Nor need we cite authorities in support of the view that the facts and circumstances surrounding the execution of a contract may be shown, as supporting an application for the reformation of a contract, so that it will recite what the parties mutually agreed upon, but by mutual mistake neglected to express in the written contract. Although the trial court seems to have excluded the offered testimony, because it would become competent and admissible only after the appellant had introduced positive testimony showing that it was originally the intention of the parties that the contract included, and was meant to include, the timber in dispute, we will discuss both the propositions of law which we have above mentioned.

[1] It is plain to us that this contract is ambiguous as to the timber to be cut. On its face, no person could say that it included the timber in dispute. It did not describe any lands and it did not describe any timber, except such as was tributary to the Tenino mill and was being logged thither, or would in the future be logged there.

[2]    First, then, concerning the receipt of testimony
tending to explain an ambiguous contract.    We think
we need not decide whether the offered testimony was
competent.    If we assume that the court should have
received and considered it, yet we must hold that it was
wholly insufficient to explain the ambiguity.    To say
that it is possible to log the timber in dispute to the
Tenino mill, or that such timber could be taken thence
at a reasonable cost, would not prove that it was the
intention of the parties in the first place that such
timber should be conveyed thence.    The testimony re-
ceived, and that offered but rejected, tended to show
that, by a somewhat circuitous route, the old logging
railroad could have been extended into the present
timber and thus brought to the Tenino mill, but, in
order so to do, the grade would have to be rather steep,
the road would have to cross an independent logging
railroad and timber owned and controlled by it, and
would have to pass over considerable tracts of farm
land before it could reach the timber in question. Under
these circumstances, respondent would be required to
construct its road over a territory several miles in
length without being able to obtain any timber there-
for, and it would be required, very likely at consider-
able cost, to purchase a large amount of right of way.
It is plain to us, that this offered testimony falls far
short of the proof necessary to show that it was the
intention of the parties, at the time of entering into the
original contract, that the timber in question should be
logged to the Tenino mill.    It would be possible and
practicable to convey immense quantities of timber to
the Tenino mill.    Logging roads can be built and oper-
ated almost anywhere.    But it does not follow that, at
the time of making this contract, it was the intention
of the parties to it to log all such timber to the Tenino
mill.    Proof more substantial is necessary; otherwise

we would find ourselves making a contract for the parties, rather than determining what they intended by the instrument they actually made.

[3] We speak now as to whether this testimony was sufficient in itself to show that there should be a reformation of the contract. In order to reform a contract, the testimony must be clear and convincing that there was a mutual mistake. The testimony offered in this case falls far short of complying with that rule. To prove that this timber could, economically or otherwise, be logged to the Tenino plant, would not prove that it was the agreement of both of the parties to the contract that it should be thus logged, and that such an agreement had been actually made, but by mutual mistake it had been omitted from the written contract. If appellant had introduced affirmative testimony showing that it was the expressed agreement that this after-acquired timber should be taken to the Tenino plant, and that provision had been left out of the contract by mutual mistake, then the offered testimony would have become competent as supporting the affirmative or positive testimony, because it might tend to show that it was reasonable, in the first place, that the parties intended so to contract.

We hold that the testimony received and the offers rejected were wholly insufficient to make a case to go to the jury, either as explaining any ambiguity there might be in the contract, or as supporting a reformation thereof to include the timber in question.

The judgment is affirmed.

TOLMAN, C. J., ASKREN, HOLCOMB, and FULLERTON, JJ., concur.