CAVANAUGH, Judge.
The plaintiff is a licensed pest control operator.
The law governing pest control operators is LSA-R.S. 40:1261 to 40:1274.
LSA-R.S. 40:1272 requires each licensed pest control operator to pay the Commission $5 “for each termite-eradication contract reported.” Failure to make this payment subjects the licensee to revocation of his license.
*407 LSA-R.S. 40:1270- says: “Every licensed pest control operator shall report to the commission, within ten days after the end of each month, each termite control contract which he- has entered into and performed during the month immediately preceding.” (Italics supplied.)
Pest control operators are required to enter into written contract “with the property holder employing him” and to guarantee performance for a period of two years. LSA-R.S. 40:1269.
Plaintiff has found a market for his services in termite proofing for subdivision owners who intend to build numerous houses thereon. He enters into a single contract for the work required in the entire subdivision on the basis of a fixed price per square foot of area to be treated, and regards this as a “termite-eradication contract”, reports it to the Commission and pays the fee of $5 even though under the contract he may termite proof 50 or possibly 500 buildings.
Defendant contends that such interpretation is contrary to the spirit and intent of the law, because, even though the law uses the word “contract” and makes no mention of individual buildings, the word “contract” as understood in connection with termite proofing has reference, and was intended by the Legislature to have reference, to individual buildings. Under this interpretation plaintiff was failed to pay the required fee of $5 per building and therefore the Commission says if the fee is not paid within a certain time the license of plaintiff will be revoked.
Plaintiff brought this suit to enjoin the Commission against revoking his license on the stated grounds.
The District Court denied, upon hearing on the merits, the application for' a preliminary injunction. Plaintiff applied for a rehearing which was denied, whereupon, plaintiff moved for a suspensive appeal which was granted and perfected by filing of the required bond on March 1, 1954.
Plaintiff, in brief, states the primary issue thus: “Whether or not in the case of multiple unit contracts the pest .control operator is obligated to pay a fee of $5.00 per building or a fee of $5.00 per contract”. He says a secondary issue is,. “Whether or not appellant is obligated to pay any fees in connection with ‘pest prevention’ work as distinguished from ‘pest eradication’ work.”
Defendant in his brief states the question thus:
“The only question for determination by this Honorable Court is whether or not the legislature intended in Act 57 of 1930, as amended by Act 141 of 1936, as amended again by Act 124 of 1942, which is now LSA-R.S. 40:1261 to 40:1274, that every licensed pest control operator shall pay $5.00 for each building treated for termite eradication or prevention or pay $5.00 for each contract entered into, regardless of the number of buildings covered by the said contract.”
Pretermitting the question of “pest prevention” as distinguished from “pest eradication”, both plaintiff and defendant have made fair statements of the question to be decided and the resolution of the question comes down to a determination by the Court of what it thinks the Legislature had im mind and what it intended to convey by the phrases “written contract with the property holder”, LSA-R.S. 40:1269, “each termite control contract”, LSA-R.S. 40:1270, “each termite-eradication contract reported”, LSA-R.S. 40:1272, and the expressions “written contract”, “such contracts”, and “upon each contract therefor” appearing in the title of Act No. 124 of 1942.
It is doubtful that any one would take exception to the conclusion that a literal construction of these terms would make a multi-unit termite control “contract with the property holder” an exception to the requirement of reporting “each termite control contract” and, the requirement of paying $5 to the Commission for “each termite-eradication contract reported.” However, it is not. the duty of the Courts to interpret statutes literally, but rather to seek out the intention of the Legislature and render such interpretation as will be in *408 consonance therewith. The interpretation must give effect to all parts of the statute so long as the same is not unconstitutional or contrary to public policy.
In State ex rel. Thompson v. Department of City Civil Service, 214 La. 683, 38 So.2d 385, 388, will be found the following statement bearing directly upon the interpretation of statutes:
“ ‘ “The Supreme Court of the U. S. laid down with great force and clearness the doctrine that-in construing a statute it is the duty of the Court to seek out the intention of the Legislature and to give effect thereto in the same manner and to the same extent that it construes a will to determine the intention of the testator, or a contract to determine the intention of the parties thereto, and that no matter how broad and comprehensive may be the language employed by the statute, if it was not the intention of the Legislature to cover a particular case by that broad and comprehensive language, that then' no effect should be given to it because the Legislature did not so intend. * * * But even if the language of the act is as broad as opponents contend, it is then the duty of the court to restrain its operation within, narrower limits than the words import, if the Court is satisfied that their literal meaning would extend to cases which the legislature never intended to include.” ’
“That doctrine was affirmed in Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237, 239, in which we further quoted approvingly from Gremillion v. Louisiana Public Service Commission et al., 186 La. 295, 172 So. 163, as follows:
“ ‘ “In the construction of statutes absurd results should be avoided, and when the literal construction would produce such a result, the letter of the law must give way to its spirit and the statute should be construed so as to produce a reasonable result. * * ”
It is clear that the foregoing rules of construction direct the attention of the Court to the statute itself with a view to construction which will give a reasonable result without too much regard to the literal meaning of the -specific words used therein.
We might quote here as appropriate the expression of the Court on this subject in Kleinpeter v. Ferrara, 179 La. 193, 153 So. 689, 690:
“But it is a .familiar rule of statutory construction'that the words of a legist lative act cannot be extended beyond their proper and natural meaning in order to meet párticular cases.”
■ In the cited case it is evident that the expression “proper and natural meaning” has reference to the meaning of the words taken in context as used in the particular statute to be interpreted.
This act, No. 124 of 1942, was passed by the Legislature under the pblice-powers of the State of Louisiana. The plain object was to bring the pest control and eradication business under expert State supervision in the interest of the public. The act must, if possible, be interpreted to accomplish the purposes intended, namely, that of making all persons holding themselves out to the public as pest control operators responsible to a central commission as to qualifications for such services, the proper performance of their work and. to provide funds for the enforcement of the-act. The law provides that every licensed, pest control operator shall enter into a written contract with the property holder employing him to control or eradicate termites, in which he shall guarantee for a period of two years the performance of the terms of his contract. It is provided that the operator shall make monthly reports within ten-days after the end of each month, of each termite control contract which he or it has. entered into and performed during the-month immediately preceding. The law provides for inspectors whose duties shall he to enforce the terms and provisions of this act and to observe and report any and' all violations thereof and 'in addition it. *409 provides for certain fees to be used to defray the expense of the Commission.
The statute, together with its title, contains provisions respecting matters that are obviously inconsistent with the contentions of plaintiff-appellant herein, for example:
The legislature could not have contemplated that the word “contract” would embrace a single instrument, otherwise in ■compliance with the law, covering pest control work of a group of houses, because, the way the law is written regarding reports ■“entered into and performed during the month” would, under strict interpretation, limit reports to completed contracts only, thus, a single multiple-unit contract would not be subject to report until the contract was wholly “performed”. Such possible interpretation would mean that the work of control or extermination on a particular building embraced in a multi-unit contract might well be completed many months before the Commission would be informed that control work had been performed. Such eventuality would defeat the provisions of the law with respect to inspection and enforcement 'because it is obvious the Legislature intended inspection to follow reasonably close upon the performance of the pest control operator, otherwise there would be no point in requiring reports by operators as often as once each month and then within ten days of the end of the preceding month. From this point of view the contention of plaintiff does not meet the requirements of the law and would, if permitted, produce an unreasonable and absurd result. The word “contract” as used in the act must therefore be restrained to embrace a building with its outbuildings or outhouses.
Bouvier defines “outbuildings” as something used in connection with a main building, and “outhouses” as buildings adjoining or belonging to dwelling houses.
It would seem that such restriction of the word “contract” as used in the law could do no violence to the statute nor could it produce any absurd or unreasonable result. It seems ■ to us that the foregoing reasoning is sound and sufficient to warrant the suggested conclusion.
We are not impressed with defendant’s argument that, plaintiff’s interpretation will not produce sufficient funds to properly support the work of the Commission. It is true, the statute and its title create a famd for the enforcement of the act by imposing a privilege tax in a fixed sum upon licensees performing pest control work based upon each contract. But the act does not define enforcement except in very general terms and therefore it provides no measure of its cost. It does not say the funds shall be sufficient or ample or all that the Commission thinks is needed. It simply says that from the funds collected shall be paid the expenses of the Commission and salaries and expenses of inspectors to be employed. There is no limit on the number of employees..
Since the act provides no other source of funds, it seems perfectly obvious that the Legislature intended the Commission to operate within such means as the said fees provide: To recognize and give force to this contention of defendant would be to extend the words of a legislative act beyond their proper meaning in order to meet a particular case, namely, to produce more funds.
Plaintiff makes the point in brief, page 5, paragraph C, that any regulation by the Commission in violation of the provisions of LSA-R.S. 40:1272 is in violation of Article 10, Section 1 of the Constitution. We cannot agree with this observation. The Court agrees with the views of the District Court, in which we find good reason to concur, the Commission has not, in this case, declared its intention to enforce a regulation which is in violátion of LSA-R.S. 40:1272, therefore, the constitutional question advanced by plaintiff has not matured..
“A regulation by a department of Government addressed to and reasonably adapted to the enforcement of an Act of Congress, the administration of which is confined to such department, has the force and effect of law *410 if it be not in conflict with express statutory provision.” Conway v. Imperial Life Insurance Company, 198 La. 999, 5 So.2d 314, 321.
The regulation complained of by plaintiff in this case had been in full force and effect for more than ten years when this suit was filed and plaintiff had reported and paid fees in accordance therewith on some of the contracts he had covering multiple units.
The Legislature after this case was argued and submitted adopted Act No. 389 of 1954, which amends LSA-R.S. 40:1272:
“Every licensed pest control operator shall, at the time he files the report provided for in R.S. 40:1270, pay, in addition to any tax already imposed for the privilege of engaging in the business required to be licensed by this Part, five dollars to the commission for each termite eradication or termite .prevention contract reported. Each contract as herein set out shall cover only one unit or one individual property treated for eradication or prevention, of termites, provided that a garage appurtenant to one unit or one individual property may be included in such contract. Failure to make this payment subjects the licensee to revocation of his license.
“From the funds collected by the commission under the provisions of this Section, the commission shall pay its expenses and the salaries and expenses of inspectors employed by it. As amended Acts 1954, No. 389, § 1.”
By the amendment the following sentence was added:
“Each contract as herein set out shall cover only one unit or one individual property treated for eradication or prevention of termites, provided that a garage appurtenant to one unit or one individual property may -be included in such contract.”
Under Paragraph C, Regulation 5 of D3 of the regulations issued by the Louisiana Pest Control Commission m 1943 and on which defendant relies in this case reads:
“A fee of five dollars for each individual property treated for termites and each contract renewal entered into must accompany the report required in Section B of Regulation 5. When a spot treatment is authorized by the Commission a five dollar fee must accompany the report that such work was done.”
The amendment of this statute by the 1954 Act indicates that the law-making body indorsed and approved the construction placed upon the statute by the administrative board.
For the reasons assigned, the judgment of the District Court is affirmed.
LOTTINGER, J., dissents but assigns no written reasons.