[No. 22904.   Department One.   May 20, 1931.]

JOHN G. MATTHEWS *et al.*, *Respondents*, v. I. CURTISS PARKER, *Appellant*.[1]

*Frank E. Hammond,* for appellant.

*John G. Matthews, Jr.,* for respondents Matthews *et al.*

*Robert M. Burgunder* and *Arthur M. Hare,* for respondent King county.

PARKER, J.—This action was originally commenced in the superior court for King county by the plaintiff, Matthews, against the defendants, Bevilacqua and King county, seeking removal of fences and obstructions in Indianapolis street of the Lake Shore View Addition to the city of Seattle, being the street along the south boundary of that addition. Matthews claims to own property abutting along the south boundary of Indianapolis street, and therefore has the right to have that street maintained free from obstructions. While

[1]Reported in 299 Pac. 354.

it is claimed by Matthews that Bevilacqua actually caused the alleged obstructions, King county was made a defendant upon the theory that it was interested in the controversy. Bevilacqua answered, claiming that the alleged obstructions are not in the street, but north of the north boundary thereof. Parker intervened in the action, claiming to own a strip of land some sixty feet wide, which, he claims, lies between Indianapolis street and the land to the south owned by Matthews. The obstructions are partly on this strip and partly north of it. The county claims this strip, and also some land north of it, as Indianapolis street, as against the claims of all other parties to the action. The case, being regarded, in substance, as of equitable cognizance, proceeded to trial in the superior court sitting without a jury, and resulted in a decree which, in so far as need be here noticed, reads as follows:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that all that portion of Government Lot 2 in Section 34, Township 26 North, Range 4 East W. M., in King County, State of Washington, lying between the south staked line of blocks 4, 5, 12 and 13 of the Plat of Lake Shore View Addition to the City of Seattle, and the south line of said Government Lot 2, is a public street or highway as platted in said addition as Indianapolis Street and the title thereof is vested in King County for street and highway purposes, and no party hereto except the defendant King County has any title to the said strip of land or any part thereof; . . ."

This is, in effect, an adjudication that the strip of land claimed by Parker is in Indianapolis street, and that therefore he has no right thereto, as will more fully appear as we proceed. From this disposition of the case in the superior court, Parker has appealed to this court, where the controversy has become one by Parker, as appellant, seeking reversal of the decree, and by the other parties to the action seeking affirm-

ance of the decree, though the decree is adverse to some of their claims made in the superior court, their interest, however, now being in the maintenance of Indianapolis street in width and location as adjudged by the decree.

As we view this controversy, the controlling facts are not in dispute and may be summarized as follows: On April 26, 1906, the Seaboard Security Company, a corporation, duly executed and acknowledged a plat, platting into lots, blocks and dedicated streets land owned by it described as follows:

"This plat of 'Lake Shore View Addition to City of Seattle' embraces all of the following described tract of land to-wit: Beginning at the ¼ corner between Sections 27 and 34 Tp. 26 N. R. 4 E. of W. M., thence S 0° 12′ E. 2619.44 ft. to the center of Section 34 Tp. 26 N. R. 4 E. of W. M., thence N. 89° 54′ E. 1571.36 ft., thence N. 22° 51′ E. 456.20 ft., thence N. 11° 18′ E. 210.30 ft., thence N. 13° 09′ W. 883.60 ft., thence N. 18° 44′ W. 739.00 ft., thence N. 17° 14′ W. 434.00 ft., thence N. 89° 18′ W. 1231.78 ft., to the place of beginning."

The dedication language is: "Do hereby declare said plat and do hereby dedicate to the use of the public forever the streets and avenues thereon shown." On May 9, 1906, the plat was duly recorded in the office of the auditor of King county.

The plat encloses by solid connecting lines on all sides the land so purported to be platted; the west line purporting to be the north and south center line of section 34, running from the north quarter corner south "to the center of section 34;" the south line purporting to be the east and west center line of the section, running from the center of the section to near the shore of Lake Washington; the easterly broken line purporting to follow northerly approximately parallel with the lake shore, running to the north section line; and the north line purporting to be the north line of

the section, running west to the north quarter corner, the place of beginning. There are no words upon the plat, or in the legend or dedication language endorsed thereon, referring to any monument or physically fixed point upon the ground showing the location of the plat upon the ground, other than "Initial Point ¼ cor.," endorsed on the plat at its northwest corner, and "Center x of sec. 34," endorsed on the plat at its southwest corner. The plat and endorsements thereon fail to indicate the placing or existence of any physical monument at the southwest corner. Of course, we judicially know that the government survey system does not call for any physical monuments at centers of sections.

The width of Seattle street running along the north boundary of the plat is in no manner designated by words or figures. The width of Indianapolis street running along the south boundary of the plat is in no manner designated by words or figures. By the scale of the map the respective widths of these streets seem to be approximately thirty feet. All of the intervening lots, blocks, and streets have their widths and dimensions designated by feet figures, so that computation of the exact platted distance between the south line of Seattle street and the north line of Indianapolis street is ascertainable. The private improvements which have been made upon the lots and the improvements which have been made of the streets have been approximately located consistent with the theory that Seattle street is thirty feet wide. The width of Indianapolis street seems to have been ignored in the making of these improvements.

There was no attempt to physically open or improve Indianapolis street until 1928. Its course seems to be through dense woods or brush and over rough ground. Several years ago, apparently early in 1923, it was

discovered that the stated distance in the plat description of 2619.44 feet from the north quarter corner of section 34, the point of beginning, "to the center of section 34," is in fact some sixty feet short of the distance between those points. So, if the plat is to be construed as being bounded on the south by the true east and west center line of the section, then the south line of Indianapolis street is the true east and west center line of the section.

On June 4, 1923, the Seaboard company executed and delivered to Parker a deed, conveying to him its interest, if any it had, in and to "that portion of Government Lot Two (2), Section thirty-four (34) . . . lying between the south boundary line of the plat of Lake Shore View Addition to the city of Seattle, . . . and the south line of said Government Lot Two (2)." The south line of Government Lot 2 is the east and west center line of section 34. Matthews is the owner of the land immediately south of that line, and, if that be the south line of Indianapolis street, then Matthews' land abuts upon Indianapolis street.

It seems to us to be too well settled to call for citation of authorities that, in a conveyance of interest in land, whether by ordinary deed or by dedication, if the description of the land be fixed by ascertainable monuments and by courses and distances, the well settled general rule is that the monuments will control the courses and distances if they be inconsistent with the monument calls. In the description of this plat we have the north quarter corner of section 34, a monument, as the beginning point from which the first course runs south "to the center of section 34," another monument, erroneously stating the distance between those two monuments. It is true that the center of the section is not a physical government monument,

as is the north quarter corner, as we must presume, but it is a point capable of being mathematically ascertained, thus constituting it, in a legal sense, a monument call of the description.

In *Fagan v. Walters,* 115 Wash. 454, 197 Pac. 635, construing a call of a deed which read: "Thence west along the north boundary of land sold and conveyed by William D. Simpson and Annie Simpson, his wife, to Isabelle Gibb on January 4, 1889," we said:

"A reading of the description contained in the deed fairly and clearly fixes the north boundary of the tract conveyed as the north boundary of the land sold and conveyed by William D. Simpson, and the Simpson boundary thus becomes a monument which controls the distance, and the distance 90.7 feet must give way to such monument. Authorities are numerous which hold that, where the call for a boundary in another deed or for the boundary of another tract is expressed as, 'by such a line,' or 'by the north line of such a tract,' the line or boundary referred to is locative and fixes the boundary definitely, and is a monument,"

citing a number of authorities. In our early decision in *Shelton Logging Co. v. Gosser,* 26 Wash. 126, 66 Pac. 151, remarks were made in harmony with this view, wherein a government fractional lot of a section was referred to as "a monument" for purpose of description of adjoining tide land. Manifestly, such a lot would be no less a monument in that description if all physical evidence of its boundary calls were obliterated, because they could be mathematically established upon the ground, just as the center of this section 34 can be and was later correctly established upon the ground.

Now, we have nothing here indicating that Indianapolis street is limited to thirty feet in width, unless it be that by the scale of the plat that street appears to be approximately thirty feet wide; that is, by the

scale of the map it appears to be approximately thirty feet from the south line of the lots and blocks fronting that street on the north to the south line of the plat. This, we are of the opinion, as the trial court was, does not overcome the controlling force of the call of the west boundary being from the north quarter corner of section 34 "to the center of section 34," a monument, as we have seen. It follows, we think, that Indianapolis street necessarily occupies the full width of the land between the south line of the south row of lots and blocks and the east and west center line of the section which is established by the center of the section as a monument. We are not deciding just how wide in feet Indianapolis street is, as thus determined. Nor do we understand the trial court to have done so in adopting "the south staked line of Blocks 4, 5, 12 and 13 of the plat," as the north line of Indianapolis street.

We do not here inquire as to the correctness of the adoption by the trial court of that staked line as the south line of the blocks and the north line of Indianapolis street. That is unnecessary for determination here, since, at all events, the whole of the strip of land claimed by Parker is within Indianapolis street as adjudicated by the decree, and the other parties to this action are not here complaining of that adjudication. Indeed, they are seeking to sustain it.

The fact that the scale of the plat appears to show Indianapolis street to be approximately thirty feet wide, it seems to us, is of no controlling force in the light of the center of the section, as a monument, being called for as the southwest corner of the plat, and the fact that there is no stated width of Indianapolis street. If there be doubt as to the proper interpretation of the plat, which, we think, there is not, the following rule would, it seems to us, be at all events con-

trolling in support of the decree of the trial court. In the text of 8 R. C. L. 896, we read:

"In the interpretation of maps and plats all doubts as to the intention of the owner should be resolved most strongly against him."

In the text of 18 C. J. 110, substantially the same view is expressed thus:

"All doubts as to the meaning of the plat and any conflict on its face will be construed most strongly against the dedicator."

Our own decision in *Gifford v. Horton,* 54 Wash. 595, 103 Pac. 988, is in harmony with this view.

It might be plausibly argued that the excess north and south width of the addition should be apportioned equally between Seattle street along the north boundary and Indianapolis street along the south boundary. Possibly, the location upon the ground of the private and street improvements, which have been made, will answer that question, should it ever arise upon conflicting claims of parties in interest. However, that is of no moment in our present inquiry, since Parker has no interest or title to any land north of the true east and west center line of the section, and, therefore, has no title to any land within the addition. He is the only party to this action complaining of the decree.

We conclude that the decree must be affirmed. It is so ordered.

Tolman, C. J., Main, and Mitchell, JJ., concur.