[No. 29308. *En Banc.* October 14, 1944.]

DANIEL L. GRANGER *et al., Respondents,* v. LOTTIE R. BOULLS *et al., Appellants.*[1]

*Clarence J. Coleman,* for appellants.

*Wright & Wright (John Kelleher,* of counsel), for respondents.

[1]Reported in 152 P. (2d) 325.

MALLERY, J.—Plaintiffs brought an action to abate a private nuisance and restrain certain violations of restrictive covenants running with the land of defendants. The court dismissed the nuisance action and restrained violations of the restrictive covenants running with the land. Defendants appeal.

Lake Ballinger is a small, fresh-water lake, located in Snohomish county a few miles outside of the corporate limits of the city of Seattle. All of the property abutting on the lake has been included in one plat, and has been divided into one- or two-acre tracts. Each person purchasing a tract fronting on Lake Ballinger did so with the following restrictive residential covenants in his or her deed:

" . . . the party of the second part, his heirs, administrators and assigns, shall not at any time hereafter *erect*, cause or procure, permit or suffer to be erected upon said premises, or any part thereof, any building or buildings to be used or occupied for *any other purpose than a private residence or dwelling*, and any such residence or dwelling erected thereon shall cost not less than $1,000.00, *but necessary outbuildings for residence uses* may be erected on said premises at the same time with, or at any time after, the erection of said residence or dwelling, and it is further expressly covenanted that no boathouse, landing or other structure shall be erected on the margin of Lake Ballinger, except for the private use of said premises, and *no refuse, litter or other obnoxious matter or thing* whatsoever shall be deposited in or allowed to pass into said lake from said premises." (Italics ours.)

The two pieces of land owned by the parties to this suit are located side by side and slope gently toward the body of water from the county road some 640 feet back of the margin of the lake. Upon appellants' land they maintained a cowbarn, chicken house, rabbitry, and pig sty, and kept four cattle, five pigs, a flock of chickens, and a number of rabbits.

The court entered a decree, the material part of which is as follows:

"It is hereby ordered, adjudged and decreed that *the defendants* shall at once and *forthwith abate* the uses being carried on by them and shall at once cease *and desist from*

*maintaining any pig or hog sties on their property, any live-*
*stock or cattle, chickens or rabbits, and shall remove all pig*
*sties, cow barns, chicken houses, and rabbitries forthwith,*
and they are enjoined from further using said property with
any of the said livestock above mentioned, or any of the
buildings housing the same, and from ever again, as long as
the covenant is in full force and effect on the land, using
their said property in violation of this injunction; and a
nuisance not having been proven, plaintiffs' second cause of
action is dismissed." (Italics ours.)

■ The appellants contend that, since the court dis-
missed the private nuisance action, from which respondents
did not appeal, it was error to restrain the appellants from
pasturing or using the land to support any cattle, pigs,
chickens, or rabbits in so far as it could be done without the
use of a barn, chicken house, pig sty, or rabbitry on the
premises covered by the covenant. The language of the
covenant prohibits the erection of buildings to be used for
any purpose other than as a private dwelling, but permits
the erection of necessary outbuildings for residence uses.
The rule is:

"Nor will a restriction be enlarged or extended by con-
struction, even to accomplish what it may be thought the
parties would have desired had a situation which later de-
veloped been foreseen by them at the time when the restric-
tion was written." 18 C. J. 386, § 450.

This will not permit a prohibition of erecting certain
buildings to extend to a restriction of the use of the land
itself. Appellants' point is well taken.

It appears that the respondents themselves had kept live-
stock on their premises, but had removed the building for
housing them to premises not covered by the covenant
shortly before bringing their action. The appellants have
the right to elect to do likewise.

■ Appellants further contend:

"The restrictive covenant: 'Necessary outbuildings for
residence uses may be erected on said premises' permits
the erection and maintenance of a small barn, chicken house,
rabbitry and piggery for the personal use and convenience
of the occupants of the dwelling located thereon."

They contend that "necessary" means "convenient," and that any building not devoted to commercial purposes that is for the support or convenience of the occupants of the residence is permitted under the covenant. They concede that they could not have a barn for a commercial dairy, but claim the right to have a barn for cows devoted to their private use or support. We have no objection to the word "necessary" being construed as "convenient," but, even if so used, it must be related to a private dwelling as such. Thus, if "convenient" be held to mean "in support of the occupants of the dwelling," then the conception of a residence as being a "place to live" will have been enlarged to include a *place in which to make a living*. To distinguish between making a living "commercially" and doing so in some vague "noncommercial" way, would, we believe, inevitably lead to confusion. On the other hand, those things that are enjoyable as an incident to living will generally be readily distinguishable from activities engaged in for the purpose of providing sustenance, at least in so far as special housing is required therefor.

Covenants, such as the one at bar, are very common. By their use, people accomplish the exclusion from the neighborhood of their residence of the unpleasant and unattractive activities which however indispensable in the world are nevertheless capable of segregation without hardship or inconvenience. Undoubtedly, the covenants in the instant case were for the purpose of segregating the land into a private residential district. That it failed to restrict the use of the land itself for farming is clear, but is equally clear that it did prohibit the erection of farm buildings as distinguished from private dwellings.

The appellants offered to prove that others, including the respondents, had made prior use of their property similar to their own use. This was refused by the court and the appellants claim it was prejudicial error. The evidence was irrelevant, except in support of the theory of waiver or estoppel.

Appellants' answer to respondents' complaint was a gen-

eral denial. In the case of *Beaulaurier v. Wash. State Hop Producers,* 8 Wn. (2d) 79, 111 P. (2d) 559, the court held:

"It is the rule that estoppel and waiver are affirmative defenses and must be pleaded. *Walker v. Baxter,* 6 Wash. 244, 33 Pac. 426; *Olson v. Springer,* 60 Wash. 77, 110 Pac. 807; *Johns v. Clother,* 78 Wash. 602, 139 Pac. 755; *Russell v. Mutual Lumber Co.,* 134 Wash. 508, 236 Pac. 96; *Shafer Bros. Land Co. v. Universal Pictures Corp.,* 188 Wash. 33, 61 P. (2d) 593."

The court's ruling was not error.

The decree is affirmed, but is remanded to the trial court with directions to modify it by striking therefrom the provisions restraining the use of the land itself in support of livestock. Only the maintenance or use of buildings for housing livestock may be restrained. Neither party will recover costs.

STEINERT, BLAKE, and ROBINSON, JJ., concur.

SIMPSON, C. J. (dissenting)—Respondents, with the apparent purpose of securing a permanent home, purchased property abutting Lake Ballinger in Snohomish county. The lake is only a few miles outside of the corporate limits of the city of Seattle. Certain covenants mentioned by the majority opinion were contained in the deed secured by the parties to this action, and were placed there for the undoubted purpose of protecting each owner in the quiet enjoyment of his home. The evidence introduced on the part of respondents, which the court evidently believed, may be summarized as follows:

Appellants maintained on their property a chicken coop, a pig sty, a cow barn, and a rabbitry. The chicken coop, built close to respondents' bedroom and about sixty feet from their kitchen door, was "filthy." The pig sty in which five hogs were kept for a period of three years, and which emitted a "vile stench," was built over a small creek which flowed over respondents' property and then into Lake Ballinger. Mrs. Granger testified:

"The pig pen is still there, I can't smell it at this time. At the time the hogs were there, the odor was very strong.

Standing on the front porch, the odor was so strong it would make you sick."

At one time when appellants butchered stock on their premises, they threw the entrails into the pig pen and allowed them to remain there for about two weeks. One side of the cow barn was covered with manure, and the rabbitry sent out an unpleasant smell. The cows at times spent the night about fifteen feet from respondents' bedroom. At times the chewing of the cuds could be heard "all through the night." Appellants "had five or six batches of roosters one right after another." These fowls, of course, made much noise at unwelcome times.

I cannot understand how the majority, with this evidence before it, can modify the decree of the trial court. The modification of the decree allows appellants to maintain on their property flocks of chickens, bands of sheep, herds of cows and horses, and numerous rabbits. Their only restriction will be in housing livestock.

The clause in the deed should be construed so as to carry out the real intent in the deed, and that was to give to the owners peace and security in their home.

It is my opinion that this decree should be affirmed even if the restrictive clause was not in the deed.

MILLARD, J., concurs with SIMPSON, C. J.

GRADY, J. (concurring)—I concur in the majority opinion, but, in view of what I believe is the import of the dissenting opinion of the chief justice, I desire to express the view that the restriction, as I read it, prohibits the erection or maintenance of any buildings other than a private residence or dwelling and necessary outbuildings for residence uses, but goes no further. It does not prevent the appellants from making use of their property for other lawful purposes. If the keeping of fowls and animals on the premises is offensive to respondents and has become a nuisance, then their remedy is to secure an abatement of the nuisance rather than to claim for the restrictive clause a construction that would so limit the use of the premises that the fowls and

animals could not be allowed or pastured thereon for any purpose.

As pointed out in the majority opinion, the cause of action based upon a claim of nuisance on account of the presence of the fowls and animals on the premises was dismissed by the trial court, and no cross-appeal having been taken by the respondents, that question is not before this court.

BEALS, JEFFERS, and MALLERY, JJ., concur with GRADY, J.