[No. 35283. Department Two. August 18, 1960.]

HOWARD GWINN et al., Appellants, v. CHARLES L. CLEAVER et al., Respondents.[1]

[1]Reported in 354 P. (2d) 913.

*Stanley N. Kasperson,* for appellants.

*Wayne C. Booth* and *Wright, Booth & Beresford,* for respondents.

FOSTER, J.—Appellants, plaintiffs below, sued to enjoin a threatened breach of restrictive covenants. The court found that projected building plans would not breach the restrictive covenants and dismissed the action. Plaintiffs appeal.

Appellants own lots Nos. 7 and 9 in Lakewood Terrace, a platted subdivision in King county, on the south side of Lake Burien. Respondent[2] owns lot No. 8. Appellant Gwinn platted the tract in 1951 and recorded the same, together with restrictive covenants, in August, 1951.

The restrictive covenant, which incorporates the plat by reference, provides, in part:

"All lots in this tract shall be known and described as residential lots; no structure shall be erected . . . other than one detached single-family dwelling for single family occupancy only, *not to exceed one story in height or one story and a daylight basement,* and a private garage for not more than two cars;

"*No building shall be located nearer to the lake shore*

---

[2] For convenience, only respondent Charles L. Cleaver will be referred to in the opinion.

*line than 100 feet* nor nearer to the side lot line than 8 feet, in lots 7, 8, 9 and 10 of said plat;" (Italics ours.)

The plat contains a description of the boundaries which, after fixing the point of beginning, recites:

". . . south 87° 23′ 23″ west 314.32 feet; thence north 1° 31′ 33″ west 693.40 feet *to the shore of Lake Burien*; thence north 78° 06′ 30″ east 20.97 feet; thence north 84° 28′ 50″ east 135.55 feet; thence south 80° 30′ east 161.38 feet; thence south 1° 31′ 33″ east 669.81 feet . . ." (Italics ours.)

On the plat diagram, there is a line corresponding to those calls, which fixes the shore side boundary of the lots.

Respondent, relying upon the filed restrictive covenants and plat, bought lot No. 8. He delivered a copy of the documents to his architect, who prepared plans for the projected house.

Appellants claim that the plans locate the house less than one hundred feet from the lake shore line and that it exceeds the height limitation. It was further argued that the proposed grading of respondent's property would raise the level of a portion of lot 8 in violation of the restrictive covenant. Appellant John Ellison also claims that respondent's property is burdened with a drainage easement in favor of Ellisons' property, and that the proposed grading would interfere with the use of the easement.

A challenge to the sufficiency of appellants' evidence was sustained on the ground that no potential violation of the restrictive covenants had been shown.

Appellants assign error (1) to the trial court's exclusion of evidence as to the actual, physical shore line on the ground that admission of such evidence would violate the parol evidence rule; (2) to the exclusion of evidence as to the effect of the proposed land grading on the alleged drainage easement; (3) to the sustaining of respondent's challenge to the sufficiency of the evidence.

Respondent contends that the restrictive covenant is clear and unambiguous, and that the term "lake shore line" as used therein refers to the calls and line on the plat describing the lake shore side boundary of the lot. The trial court

so found, and thereupon rejected extrinsic evidence offered by appellants to show that "lake shore line" means the actual, physical shore of the lake.

■ It is the court's function to determine from the document whether it is ambiguous or incomplete. Only then is resort to parol evidence permissible. *Washington Fish & Oyster Co. v. G. P. Halferty & Co.,* 44 Wn. (2d) 646, 269 P. (2d) 806.

■ A restrictive covenant is to be strictly construed. *Miller v. American Unitarian Ass'n,* 100 Wash. 555, 171 Pac. 520; *Granger v. Boulls,* 21 Wn. (2d) 597, 152 P. (2d) 325, 155 A. L. R. 523. Public policy favors the free use of one's own land. Imposed restrictions will not be aided or extended by judicial construction, and doubts will be resolved in favor of the unrestricted use of property.

■ The law is settled that, in the interpretation of maps and plats, all doubts as to the intention of the owner or maker should be resolved against him. *Mathews v. Parker,* 163 Wash. 10, 299 Pac. 354.

■ The platter's intention is gathered from the plat itself. *Osborne v. Seattle,* 52 Wash. 323, 100 Pac. 850. In *Olson Land Co. v. Seattle,* 76 Wash. 142, 136 Pac. 118, we held:

" . . . the plat itself is the best evidence of the intention of the dedicators; and unless such plat is uncertain or ambiguous, parol evidence cannot be heard to determine the intention of the dedicators. . . ."

■ Unless there is ambiguity in a writing, the intention of the parties is to be gathered from the document. The trial court held, and we agree, that there is no ambiguity in the documents here involved. The land use restriction was defined by the term "lake shore line," and it must be remembered that the restrictive covenants by reference incorporated the plat which thus became a part thereof. The plat description recites that the westerly line of the plat runs "to the shore of Lake Burien" and then describes the boundary line along the lake shore by its calls. There is a line on the plat diagram along the shore of the lake

corresponding to those calls. From the face of these documents, one quite clear meaning is observable—that "lake shore line" refers to the line on the plat corresponding to the calls setting the lot boundaries along the lake.

If there were an ambiguity, then parol evidence would be proper. However, the purpose for which appellants offered parol evidence was to create an ambiguity, to attempt to show that the intention of the makers of the covenants and plats was different from the intention clearly appearing on the face of the documents. The parol evidence rule controls. As was said in *Van Doren Roofing & Cornice Co. v. Guardian Cas. & Guaranty Co.,* 99 Wash. 68, 168 Pac. 1124, and approved in *Washington Fish & Oyster Co. v. G. P. Halferty & Co., supra:*

"The rule is universal that the written contract itself must be resorted to as the source of authority for receiving parol evidence. *Parol evidence is never admissible to create an ambiguity, but only to explain or remove an ambiguity apparent on the face of the instrument,* or to identify a subject-matter otherwise uncertain. . . ." (Italics ours.)

The trial court correctly excluded the extrinsic evidence. Since "lake shore line" was properly determined to be the line on the plat, and since there is no contention by appellants that the proposed house is to be erected less than one hundred feet from that line, the trial court's holding that there was no violation of the restrictive covenant in this respect was proper.

■ Appellants' argument that the house would violate the height restriction was, likewise, correctly rejected. All of the evidence is that a cross section at any point in this split-level house would reveal no more than one story and a daylight basement. There is no restriction against split-level houses.

■ Respondent's grading of his property could have no effect upon the drainage easement. Those served by the easement are not damaged by the change in the land contour. They have no easement to dispose of water over the surface of respondent's land. The grading violates no restriction and none of appellants' rights.

Affirmed.

WEAVER, C. J., MALLERY, FINLEY, and ROSELLINI, JJ., concur.

