No. 12873

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

ELMER HIGDEM and VERDA HIGDEM,
husband and wife,

             Plaintiffs and Respondents,

        -vs-

WILLIAM R. WHITHAM and JUNG YUL WHITHAM,
husband and wife,

             Defendants and Appellant.

---

Appeal from:  District Court of the Eleventh Judicial District,
              Honorable Robert C. Sykes, Judge presiding.

Counsel of Record:

    For Appellant:

        McGarvey and Moore, Kalispell, Montana
        James D. Moore argued, Kalispell, Montana

    For Respondents:

        Fennessy, Crocker and Harman, Libby, Montana
        David W. Harman argued, Libby, Montana

---

                              Submitted:  May 9, 1975

                                Decided:  JUN 13 1975

Filed:  JUN 13 1975

Thomas J. Kearney
                                            Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by defendants William R. Whitham and Jung Yul Whitham from an order and judgment entered in the district court, Lincoln County, holding that a garage built by the defendants violated certain restrictive covenants and ordering the garage removed. The matter was tried by the court, sitting without a jury.

The matter was presented to the trial court on these agreed facts:

> "That plaintiffs [Elmer Higdem and Verda Higdem] and defendants are neighbors and owners of adjacent lots of real property in Mountain View Park, a subdivision in Lincoln County, Montana, which is located approximately one-half mile north of Libby, Montana. Plaintiffs are owners of Lot 1, Block 6 of Mountain View Park. Defendants are owners of Lot 2, Block 6 of Mountain View Park. Plaintiffs' lot is bordered on two sides by dedicated streets, in the rear by an alley and to the west by defendants' lot. Defendants have frontage on a dedicated street, an alley to the rear, plaintiffs to the east and by McGlumphys, not parties to this action, to the west. That Lot 1 and Lot 2 of Block 6 Mountain View Park owned by plaintiffs and defendants, respectively, are subject to certain restrictive covenants of record at Book 109 Page 155 Book of Deeds at the office of the Lincoln County Clerk and Recorder * * *.

> " * * *

> "That on or about April 24, 1974 defendants commenced construction on a garage addition on their lot, which garage is 34 feet wide, 38 feet deep and its maximum height will be approximately 15 feet 9 inches. The garage addition will contain three garage doors and will be attached to the dwelling located on the lot. All of the pertinent lots are 50 feet wide by 125 feet deep.

> "That the plaintiffs and defendants share a well system, that the well system is enclosed above the surface of the ground; that the water source is approximately forty-two (42') beneath the surface of the ground.

> "That the defendants at one time inquired among neighbors into the efficacy of performing occasional small mechanical jobs, such as tune-ups, within the

- 2 -

garage structure and was informed by neighbors that they would object to such a use of the said garage structure.

"That the garage in question does not encroach upon property belonging to the plaintiff."

The restrictive covenants referred to in the agreed statement of facts in pertinent part state:

"1.  The purchasers, as to the said lots of land hereby conveyed, and with intent to bind all persons in whom the said lots hereby conveyed shall for the time being be vested, but not so as to be personally liable under this covenant after having parted with the said lots, for themselves and their heirs and assigns hereby covenant with the sellers and their assigns as follows:

"a.  Not to erect any building other than a single detached dwelling house, either with or without a garage or other like and necessary out-building, upon the said lots of land hereby conveyed, or any part thereof.

"b.  Not to erect or suffer to be erected upon said lots of land hereby conveyed any dwelling house at a cost of less than $10,000.00, such cost to be calculated upon the net cost of labor and material alone, estimated at prices now current.

"c.  Not to use any building to be erected upon said lot of land hereby conveyed or any part thereof, for any purpose other than those incident to the use of a private dwelling house only; this provision being intended to prohibit the use of any housing for livestock or poultry, or for any commercial purpose, provided, however, that nothing herein is intended to prohibit use of any such building for private workshops, green-houses or other like purposes."

With the agreed statement of facts and covenants before it, the trial court heard the testimony of plaintiffs and defendants and that of one Glenn Mueller, a neighbor.

Defendant William Whitham testified that he had purchased the property several years ago and at that time had considered taking odd jobs when he got the garage built, but he encountered such opposition from neighbors that he abandoned that idea and had so informed his neighbors; that the one car garage that came with the house was inadequate for his use and that of his family, a wife and three children, who between them owned three compact

- 3 -

station wagons, two pickups, a Suzuki motorcycle, and two trail Hondas; that one of the reasons for building a large garage was to furnish storage for the vehicles, tools, lawn equipment, extra tires and firewood; that after building the garage he converted the old one car garage into a den. Whitham's wife testified essentially the same as her husband.

Plaintiff Elmer Higdem, a local automobile dealer, testified that he and his family had lived in the addition over ten years; that shortly after defendants moved in Bill Whitham told him of his intent to build a garage and he might do odd jobs in it as a mechanic; that he told Whitham he would object to any such commercial work; that as to the garage, he would not have objected to a two stall garage but when he saw the size of the actual garage defendant was building, he objected and filed a complaint on the basis that the building violated the restrictive covenants, and interfered with his easement of light and air. Plaintiff Verda Higdem's testimony concerned an exhibit she had prepared of the plats in question.

The testimony of Mueller, a neighbor, concerned the fact that defendant had earlier discussed building a new garage with him and that he was considering taking small mechanical jobs at his home.

The trial court made nine findings of fact, none harmful to defendant and then concluded:

> "1. The garage addition is in violation of the restrictive covenants in that defendants already had an attached garage on said property; and is not a necessary outbuilding.
>
> "1a. That the additional building, its size and the purpose intended are in violation of the restrictive covenants.
>
> "2. That said construction apparently will not result in adversely affecting the water system.
>
> "3. That said garage addition does not violate

any zoning regulations or City Ordinances, since none are now in existence.

"4. That defendants should remove said garage addition from the premises due to defendants' violating the restrictive covenants.

"5. Plaintiffs are entitled to their costs."

Defendants appeal and present two issues for review:

1. Are the district court's conclusions of law supported by the findings of fact?

2. Did the district court err in construing the language of the restrictive covenants so as to prohibit the construction of defendants' garage?

Regarding issue No. 1, we find the conclusions of law, if that they are, are not supported by the court's findings of fact. Conclusions 4 and 5 simply state the defendants should remove the garage and pay plaintiffs their costs. These, we believe, are remedies, not proper conclusions.

After the trial court's decision, defendants moved for a new trial, but this was denied by the trial court. Under Montana's Rules of Civil Procedure, the proper procedure would have been to proceed under Rule 52(b), M.R.Civ.P.

The trial court's findings and conclusions are inconsistent. From the court's conclusions it would appear the order for removal of the garage must have been based on its conclusion la:

"That the additional building, its size and the purpose intended are in violation of the restrictive covenants."

However, no reference is made to a specific covenant and none of the covenants relate to construction, existence, or size of any buildings on the land. Covenant "c" only relates to the use of the land and the use of the structures. The only language in covenant "a" which in any way might relate to size, albeit indirectly, is the phrase "necessary outbuildings".

Here, we are considering a garage. We note the term

- 5 -

"necessary" does not proceed the term "garage", but rather the term "outbuilding". Assuming the trial court superimposed the term "necessary" upon the new garage, we look to a recent decision of this Court, Timmerman v. Gabriel, 155 Mont. 294, 298, 470 P.2d 528, to interpret the term "necessary" in a restrictive covenant. In Timmerman the Court was required to determine whether a "double-wide" trailer fell within the meaning of a covenant prohibiting trailers. The Court said:

> "The construction of covenants in deeds to property is not unlike the construction of contracts.
>
> "Section 13-710, R.C.M. 1947, provides:
>
> "'The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.'"

Montana does not have case authority interpreting the term "necessary outbuildings" within the context of a restrictive covenant, but we find a number of cases throughout other jurisdictions construing the word "necessary" to mean convenient to the dwelling and we so hold here. Granger v. Boulls, 21 Wash.2d 597, 152 P.2d 325; Thompson v. Pest Control Comm., (La. 1954), 75 S.2d 406; King v. Kugler, 17 Cal.Rptr. 504; 92 ALR2d 872. Here, the new garage is convenient to the house and is in conformity with the aesthetic quality of the area. The court's conclusion the garage must be torn down and removed is not supported by any of its findings.

The second issue is whether the court erred in construing the language of the restrictive covenants. The trial court erred in ordering the garage removed.

This Court in Dunphy v. Anaconda Co., 151 Mont. 76, 80, 438 P.2d 660, spoke to the rules of statutory construction that are applicable here:

> "Although various rules of statutory construction

have been developed and employed in diverse cases that have come before this court in the past, we consider the following to be applicable to the instant case in determining legislative intent. The intention of the Legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so determined, the courts may not go further and apply any other means of interpretation. [Citing cases.] Where the language of a statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. [Citing cases.] The function of the court is simply to ascertain and declare what in terms or in substance is contained in the statute and not to insert what has been omitted. [Citing cases.] In short, it is simply the duty of the Supreme Court to construe the law as it finds it. [Citing cases.]"

Applying the above principles to construing the language of the restrictive covenants here, we hold that where the words are plain, unambiguous, direct and certain and admit of but one meaning, then it is the duty of this Court to declare what the terms of the covenants contain and not to insert a limitation not contained therein.

In their brief and on oral argument, plaintiffs argued in support of the/trial court's conclusion of law 1a, which refers to the size of the garage. They rely on case authority to support their position, and cite three cases. Hansen v. Facione, 294 Mich. 473, 293 N.W. 723; Moore v. White, (Okla. 1958), 323 P.2d 352; Bruce v. McClees, 110 N.J.E. 92, 158 A. 849. We find these cases differ factually from the instant case. In Bruce the covenant had a set back proviso of at least 100 feet from the street and much of the case turned on interpreting the proviso. Hansen involved a defendant who owned and operated two five ton trucks for hauling rubbish and he built a 40 foot by 50 foot garage, in a restricted area, to accommodate his business operations. While Moore is close to the instant case factwise, there was a set back regulation and a space requirement that takes Moore out of the fact situation here.

The overriding policy of individual expression in free and

reasonable land use dictates that restrictions should not be aided or extended by implication or enlarged by construction. Sporn v. Overholt, 175 Kan. 197, 262 P.2d 828; Flaks v. Wichman, 128 Col. 45, 260 P.2d 737; Granger v. Boulls, 21 Wash.2d 597, 152 P.2d 325.

Three basic rules may be gleaned from these cases:

(1) that restrictive covenants be strictly construed,

(2) that ambiguities be resolved in favor of free use of property, and

(3) that the district court should not have broadly interpreted and imposed these restrictive covenants in terms of what the parties would have desired had they initially been confronted with questions later developing.

The judgment of the trial court is reversed and the cause returned to the district court with directions to enter judgment for defendants.

_____
Justice

We concur:

_____

_____
Justices


Mr. Chief Justice James T. Harrison did not participate in this cause.

- 8 -

Mr. Justice Wesley Castles specially concurring:

I concur in the result here but do not believe we need go beyond the covenant language to find that the trial court's conclusions are not correct.

_____
Justice