[No. 2867–2. Division Two. August 21, 1978.]

JOHN RUSH, ET AL, *Respondents,* v. RAYMON M. MILLER,
ET AL, *Defendants,* CREST BUILDERS, INC.,
*Appellant.*

*William P. McCormick, Tom Faubion,* and *McCormick, Hoffman, Rees & Arnold,* for appellant.

*Ronald E. Thompson,* for respondents.

REED, A.C.J.—Plaintiffs John Rush and Fred E. Lepo, Jr., obtained a judgment enjoining defendants Raymon Miller, et al, from constructing a road through the subdivision in which plaintiffs both own property. Crest Builders,

Inc., the intervenor below, disagrees with the trial court's interpretation of the language of the restrictive covenants involved here and appeals. We affirm.

In August of 1959, certain restrictive covenants governing the use of land in the first addition of A. P. Johnson's Estates' subdivision were recorded in the Pierce County Auditor's Office. Covenant 5 states:

> There shall be no commercial use of tract for auto–wrecking establishment, used lumber yard, or any business that would detract from residential area. *All lots shall be used for residential purposes, unless otherwise zoned.* By variance granted by the P.C.P.C. [Pierce County Planning Commission], lots may be further subdivided when approved by the planning commission.

(Italics ours.)

The second addition to Johnson's Estates was recorded on July 6, 1964. This document, too, contained a covenant restricting use of the lots to residential purposes. At all times relevant to this appeal, the plaintiffs have owned property in Johnson's Estates.

In May of 1976, intervenor Crest Builders purchased the south half of tract 5 of Johnson's Estates and the tract of land commonly known as the Shadywood subdivision from defendants Strand and Wickland.[1] The Shadywood subdivision is adjacent to Johnson's Estates. On application from Crest Builders, and after notice and a hearing, the Pierce County Board of Commissioners passed resolution No. 19177, approving a preliminary plat for the Shadywood subdivision. The plat which was prepared by defendant Jack J. Sleavin, divided the approximately 8.5 acres of Shadywood into 25 residential building sites. In addition, the plat incorporated the south half of tract 5 of Johnson's Estates; plans called for construction of a 60–foot roadway across the western half of tract 5. The roadway was to have connected the Shadywood and Johnson parcels.

---

[1] In 1968, by real estate contract, defendants Raymon and Derell Miller sold this property to defendants Kenneth and Hazel Strand and W. F. and Virtue Wickland. In May of 1976, the Strands and Wicklands sold their interest to intervenor Crest Builders, Inc. This sale was negotiated by defendant Collison Realty,

On January 6, 1977, plaintiffs filed a complaint seeking to enjoin construction of the roadway. They contended that the covenants concerning residential use of the lots barred defendants from using the tract 5 property in the proposed manner. Plaintiffs also challenged the board of commissioners' decision to approve the plat, alleging that such action violated the State Environmental Policy Act, RCW 43.21C.010 *et seq.* Crest Builders was permitted to intervene in this action. Two witnesses were called at trial. Plaintiff Lepo testified that the owners of lots within Johnson's Estates were concerned that construction of a road across tract 5 would increase the volume of traffic on all roads in the area. Defendant Sleavin, the only other witness, stated that alternate access to Shadywood had been provided through the Rodvelt subdivision, which also borders on the Shadywood subdivision. He testified that although the county had approved the preliminary plat for Rodvelt, a final acceptance had not yet been issued. Finally, Sleavin maintained that use of tract 5 as an access route would not unduly burden the existing roads through Johnson's Estates and that the existence of two throughways would be beneficial. The trial court found that the proposed roadway through tract 5 was in violation of the restrictive covenant and granted the injunction. Intervenor Crest Builders appeals.

On appeal, Crest Builders contends that the trial court erred in failing to find that use of tract 5 as a roadway for the Shadywood subdivision is a residential purpose. It urges that we apply the rule of ejusdem generis to covenant 5 of the first addition and hold that the clause which states that the lots may only be used for residential purposes is limited by the specific proscriptions against auto–wrecking establishments and used lumber yards.

---

Inc., a licensed real estate broker. The Millers have at all times remained the record owners of the south half of tract 5—Johnson's Estates and the Shadywood subdivision.

██ Washington courts have applied the rule of ejusdem generis in appropriate cases. As stated by the court in *In re Estate of Patton,* 6 Wn. App. 464, 469, 494 P.2d 238 (1972):

> Under the rule . . . a general description of things which is in the same context as a specific enumeration of certain items will be limited to refer only to things of the same kind enumerated . . .

*See also* 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 188 (1965). This rule is, of course, simply a rule of construction and will not be applied to defeat the plain purpose of the restriction. 20 Am. Jur. 2d, *supra; cf. State v. Thompson,* 38 Wn.2d 774, 232 P.2d 87 (1951) (discussing statutory interpretation). Here the term "residential" is not ambiguous and clearly is intended to embrace more than the specific restrictions against lumber yards and auto–wrecking establishments. We therefore find no basis for applying the rule of ejusdem generis in interpreting the language of this covenant. *See also Stewart v. Barber,* 182 Misc. 91, 43 N.Y.S.2d 560 (1943). We must now determine if a road is a residential purpose. Jurisdictions which have considered this question have split into two groups. A number of courts, relying on several different theories, have permitted an owner of land restricted to residential purposes to use such property as a roadway. *Bove v. Giebel,* 169 Ohio St. 325, 159 N.E.2d 425 (1959) (roadway permitted because adjoining land was also restricted to residential use). *Vinyard v. St. Louis County,* 399 S.W.2d 99 (Mo. 1966) (restriction interpreted as referring only to nonresidential structures: road not considered a structure). Other authority, however, supports the view that construction of a roadway is precluded by a covenant restricting use of lots to residential purposes. *Thompson v. Squibb,* 183 So. 2d 30 (Fla. Dist. Ct. App. 1966); *Franzle v. Waters,* 18 N.C. App. 371, 197 S.E.2d 15 (1973); *Donald E. Baltz, Inc. v. R.V. Chandler & Co.,* 248 S.C. 484, 151 S.E.2d 441 (1966); *cf. Lincoln Sav. & Loan Ass'n v. Riviera Estates Ass'n,* 7 Cal.

App. 3d 449, 87 Cal. Rptr. 150 (1970) (language in equitable servitude one of the factors in court's decision). *See generally* Annot., 25 A.L.R.2d 904 (1952).

Crest Builders urges us to adopt the former position and reverse the trial court. It asserts that this construction of the covenant is consistent with the rule that covenants restricting the use of land are to be narrowly construed. *Burton v. Douglas County,* 65 Wn.2d 619, 399 P.2d 68 (1965); *Bersos v. Cape George Colony Club,* 10 Wn. App. 969, 521 P.2d 1217 (1974); *Holmes Harbor Water Co. v. Page,* 8 Wn. App. 600, 508 P.2d 628 (1973); 20 Am. Jur. 2d, *supra* § 187.

 We, of course, agree with Crest Builders' statement of the general rule for interpreting ambiguous language in a restrictive covenant; however, we do not find the rule to be applicable to this situation. Unambiguous language in a covenant will be given its plain and reasonable meaning; the courts will not apply a rule of construction where it will defeat the obvious purpose of the restriction. *Burton v. Douglas County, supra; Holmes Harbor Water Co. v. Page, supra.* On the facts before us we find that the term "residential" has a clear meaning and agree with those courts which hold that a roadway which is designed primarily to benefit or serve property outside a restricted subdivision is simply not a residential purpose.

As stated by the court in *Thompson v. Squibb, supra* at 32–33:

> It is obvious that the use of defendant's lot as a connecting street so that there would be access from the streets of the adjoining subdivision to those of the subdivision for whose benefit the restrictive covenants were made is not in any sense a residential use or a use incidental thereto.

The judgment of the trial court is hereby affirmed.

PETRIE and CALLOW, JJ., concur.