[No. 7391–5–I. Division One. July 14, 1980.]

FAIRWOOD GREENS HOMEOWNERS ASSOCIATION, INC., *Appellant,* v. W. E. YOUNG, ET AL, *Respondents.*

*Richard A. Jackson* and *Roberts, Anderson & Jackson,* for appellant.

*Thomas T. Middleton, Jr.,* and *Snyder & Middleton, P.S.,* for respondents.

SWANSON, J.—Fairwood Greens Homeowners Association, Inc., commenced this action to enjoin W. E. Young and Virginia T. Young, his wife, from placing a motor home on their property in violation of a restrictive covenant. The trial court concluded that the covenant did not apply to a motor home and dismissed the action. This appeal followed

In 1968 the Youngs purchased a lot in Fairwood Greens, a residential development in south King County. Prior to signing the earnest money receipt and sales agreement, the Youngs were provided with a copy of the covenants, conditions, and restrictions applicable to all lots in Fairwood Greens. Because, at the time, the Youngs owned a 20–foot travel trailer, they were particularly interested in article 9, section 4, which provided in part,

ARTICLE IX. GENERAL PROTECTIVE COVENANTS

Section 4. Business and Commercial Use of Property Prohibited. No trade, craft, business, profession, commercial or manufacturing enterprise or business or commercial activity of any kind shall be conducted or carried on upon any residential lot, or within any building located on [a] residential lot, nor shall any goods, equipment, vehicles (including buses, trucks and trailers of any description) or materials or supplies used in connection with any trade, service, or business, wherever the same may be conducted, or any vehicles in excess of 6,000 pounds gross weight (including buses, trucks and trailers of any description) used for private purposes, be kept, parked, stored, dismantled or repaired *outside of* any residential lot or on any street within the property nor shall anything be done on any residential lot which may

be or may become an annoyance or nuisance to the neighborhood.

(Italics ours.)

On the basis of their interpretation of this section—that "outside of any residential lot" meant it was permissible to park a vehicle *on* their lot—the Youngs negotiated with a builder to have a concrete slab installed next to their house so their trailer could be kept on their lot. Later they had a 6–foot–high fence built around the slab.

In late 1969 the Homeowners Association brought suit against another Fairwood resident, Thomas E. Toland. *Fairwood Greens Homeowners Association, Inc. v. Toland,* King County cause No. 717470 (1971). The Association sought to enjoin Toland from parking or storing his converted school bus on his lot. As a result of the action, and pursuant to a stipulated judgment, section 4 of article 9 was ordered reformed so that the phrase, "outside of any residential lot," was changed to "outside on any residential lot."

In 1977 the Youngs sold their travel trailer and purchased a 22–foot motor home with a gross weight of 10,500 pounds. In May of that year they were requested by letter to remove the motor home because it was in apparent violation of article 9. The Youngs failed to do so, and the Association brought suit to enjoin the Youngs' use of their property for parking a mobile home upon it and to remove the mobile home from their lot.

The primary issue at trial was whether article 9, section 4, as modified by the Toland decision, was binding upon the Youngs' use of their property in Fairwood Greens. However, the trial court did not reach this issue in deciding the case. Instead, the court ruled,

> The restrictive covenant of Article IX, section 4 does not apply to motorhomes and it is not applicable to the defendants' motor home[,]

conclusion of law No. 3, and dismissed the complaint for injunctive relief. The trial judge explained the basis for his decision in this excerpt from his oral opinion,

Since motor homes are not included in the definition of trucks, trailers, and buses, then I don't believe they are included in this restriction, and I am certainly not going to find that they are a nuisance. . . .

Therefore, I will find in favor of the defendants and against the plaintiffs based simply on the fact that the motor home is not a bus, as it was in the case of the previous decision, nor a trailer, nor a truck, and we will limit strictly the provisions of this article to words it uses.

The Homeowners Association assigns error to the trial court's interpretation of article 9, section 4 of the covenant and claims its plain language includes any vehicle in excess of 6,000 pounds in its restrictive provisions, thus including a motor home. The Association argues that the meaning of the phrase, "including buses, trucks and trailers of any description," does not limit the prohibited vehicles solely to those specifically mentioned in the restrictive covenant.

In interpreting restrictive covenants, the primary objective is to determine the intent of the parties, and clear and unambiguous language will be given its manifest meaning. *Burton v. Douglas County,* 65 Wn.2d 619, 399 P.2d 68 (1965); *Gwinn v. Cleaver,* 56 Wn.2d 612, 354 P.2d 913 (1960). Intent is a question of fact to be discovered by reference to the instrument in its entirety and the manifest meaning of the language used by the parties. *Foster v. Nehls,* 15 Wn. App. 749, 551 P.2d 768 (1976). Restrictions being in derogation of the common–law right to use land for all lawful purposes will not be extended by implication to include any use not clearly expressed, *Burton v. Douglas County, supra,* nor will they be aided or extended by judicial construction, *Gwinn v. Cleaver, supra; Granger v. Boulls,* 21 Wn.2d 597, 152 P.2d 325, 155 A.L.R. 523 (1944). Although a restrictive covenant is to be strictly construed, it must be considered in its entirety, and surrounding circumstances are to be taken into consideration when the meaning is doubtful. All doubts as to the intention of the owner or maker should be resolved against them. *Matthews v. Parker,* 163 Wash. 10, 299 P. 354 (1931). Public policy favors the free use of land, and doubts will be resolved in

favor of the unrestricted use of property. *Gwinn v. Cleaver, supra.* However, the strict rule of construction should not be applied in such a way as to defeat the plain and obvious purpose of the restriction. *Rush v. Miller,* 21 Wn. App. 156, 584 P.2d 960 (1978); 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 187 (1965).

In this case, the plain and obvious purpose of article 9, section 4, as reformed by the Toland decision, is to prohibit at least four uses of residential lots within Fairwood Greens: (1) carrying on commercial activity, (2) parking or storing on a residential lot or a street within Fairwood Greens any vehicle used for commercial purposes, (3) parking or storing on a residential lot or street any vehicle used for private purposes having a gross weight in excess of 6,000 pounds, and (4) doing anything on any residential lot which may be or become a nuisance to the neighborhood. This conclusion is dictated by the plain language of article 9, section 4, which states in relevant part as follows, to wit:

> ■ No . . . commercial . . . activity . . . shall be conducted upon any residential lot . . . [2] nor shall any . . . vehicles (including buses, trucks and trailers of any description) . . . used in connection with any . . . business . . . [3] or any vehicles in excess of 6,000 pounds gross weight (including buses, trucks and trailers of any description) used for private purposes, be kept . . . outside on any residential lot or on any street within the property . . . [4] nor shall anything be done on any residential lot which may be or may become an annoyance or nuisance . . .

■ We therefore are persuaded that the trial court erred in dismissing plaintiff's complaint on the basis that the restrictive covenant of article 9, section 4, as modified by the Toland case, does not apply to motor homes in excess of 6,000 pounds. It is well settled, however, that if a judgment is correct, its result may be sustained on any theory within the pleadings and proof. *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975); *Thompson v. Thompson,* 82 Wn.2d 352, 510 P.2d 827 (1973). We affirm the judgment

dismissing the Homeowners Association's complaint for injunctive relief, but on other grounds.

When the Youngs purchased a residential lot in 1968, article 9, section 4 of the covenants applicable to Fairwood Greens restricted the placing of any vehicle in excess of 6,000 pounds gross "outside of any residential lot or on any street" instead of "outside on any residential lot or on any street" as modified by the Toland decision in 1971. By the plain and unambiguous language of the covenant in effect when the Youngs purchased the property, there was no restriction as to placing a motor home *on* a residential lot. The restriction applied to placing a vehicle in excess of 6,000 pounds outside of a lot or on a street. As previously indicated, virtually the entire focus of the trial was upon the applicability of the Toland decision to the Youngs, a question not answered by the trial court. The trial judge found, however, that the Toland action culminated in a stipulation and judgment with a monetary settlement with the defendant Toland regarding the storing of his bus and the reformation of article 9, section 4. The court also found that the Youngs were not parties to the Toland proceeding, and the judgment contained no reference to the case as a class action. The court also specifically found,

> Further, the purchase by the defendants of their present motor home as stated hereinbefore constituted further justifiable reliance by them upon the covenant as drafted and recorded February 14, 1967.

Finding of fact No. 15. In addition, the court entered a further finding to the effect that the declaration of covenants applicable to Fairwood Greens contained a provision which described a procedure for amendment of the covenants which the court found the Youngs had a right to rely upon, and that no attempt had been made to amend article 9, section 4 pursuant to the amendment provisions of the declaration.

The proceedings in the Toland case were admitted in evidence and contain a statement purportedly signed by W. E. Young that he opposes the Toland case as a class

action and does not wish to be a part of it. It is also apparent from the record that the provisions of CR 23 relating to class actions were not followed. Even though the Youngs had notice of the Toland proceeding, no orders were entered to insure protection of class members and to authorize specific notice to them, not even an order establishing a class. To hold that the Youngs are bound by the purported reformation of article 9, section 4 ordered by the court in the Toland case would require us to ignore the Youngs' right to due process of law. Further, we see no impediment to the Youngs' collateral attack upon the Toland decision in this case.

As our court stated in *Watson v. Washington Preferred Life Ins. Co.*, 81 Wn.2d 403, 502 P.2d 1016 (1971) at page 408,

> The essence of procedural due process is notice and the right to be heard. The notice must be reasonably calculated to apprise a party of the pendency of proceedings affecting him or his property, and must afford an opportunity to present his objections before a competent tribunal.

The Youngs were not made a party to the Toland proceeding; neither was it a class action, nor did the Youngs assent to the litigation as a member of the Homeowners Association. Accordingly, the purported reformation of article 9, section 4 of the covenants applicable to all lots in Fairwood Greens is not binding upon the Youngs, and the dismissal of the Homeowners Association's complaint is affirmed.

CALLOW, C.J., concurs.

DORE, J. (concurring)—I also concur in affirming the trial court decision for the additional reason that the restrictive covenant of article 9, section 4 does not apply to a "motor home," which is a noncommercial vehicle.

The writing judge correctly set forth the controlling law in the subject case, which we partially repeat.

> In interpreting restrictive covenants, the primary objective is to determine the intent of the parties, and

clear and unambiguous language will be given its manifest meaning. *Burton v. Douglas County,* 65 Wn.2d 619, 399 P.2d 68 (1965); *Gwinn v. Cleaver,* 56 Wn.2d 612, 354 P.2d 913 (1960). . . . Restrictions being in derogation of the common–law right to use land for all lawful purposes, will not be extended by implication to include any use not clearly expressed, *Burton v. Douglas County, supra,* nor will they be aided or extended by judicial construction, *Gwinn v. Cleaver, supra; Granger v. Boulls,* 21 Wn.2d 597, 152 P.2d 325, 155 A.L.R. 523 (1944). . . . Public policy favors the free use of land, and doubts will be resolved in favor of the unrestricted use of property. *Gwinn v. Cleaver, supra.*

The trial court found upon substantial evidence that the restrictive covenant, when interpreted in its entirety, did not apply to the Youngs' motor home. The covenant heading, which reads "Business and Commercial Use of Property Prohibited," indicates an intent to prevent a homeowner from conducting a *commercial* business from his or her residence and to prohibit *commercial vehicles* from being parked at the residence and used for private purposes, regardless of whether a business or commercial enterprise is actually conducted on the property. The covenant does not restrict a party from owning a pickup truck for private use, although it would be included within the phrase "any buses, trucks and trailers of any description." I believe it is clear that article 9, section 4 of the restrictive covenant was limited to "buses, trucks and trailers of any description" *used for commercial purposes,* and has no application to a motor home used for a noncommercial purpose, as in the subject case.

I agree with the majority that the judgment of the trial court should be sustained.