ALMON, Justice.
The trial court in this case permanently enjoined construction of a public road across a residential subdivision lot on the grounds that the road would violate a restrictive covenant against structures not residential in nature. We affirm.
Shelby and Georgine Trice, appellees, own and reside on lot 7, New Country Club Estates, in Mobile County, Alabama. Lot 7 lies immediately north of and adjacent to lot 8, which is presently owned by L. W., Incorporated, appellant. Lot 8 is undeveloped except for a paved driveway running from west to east and serving the old Soost home in which Robert and Patricia Meaher now live. L. W., Inc., purchased a portion of the Soost property adjoining lots 7 and 8 to the east and proposed to create a six-lot subdivision connected with Rochester Road, which fronts lots 7 and 8, by a cul-de-sac crossing lot 8.
Lots 7 and 8 are subject to restrictive covenants which provide, in pertinent part, as follows:
“All numbered lots in said unit shall be known and described as residential lots. No structure shall be erected, altered, or placed or permitted to remain on any residential building lot in any such sub-division so delegated, other than one detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than three cars and other accessory structures customarily incident to residential occupancy.

“No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood .. . . ”
The Trices sued L. W., Inc.; the trustees of the Soost estate, as holders of a vendor’s lien on lot 8; and the Meahers, as holders of an easement for ingress and egress across lot 8, seeking a permanent injunction against construction of a public roadway across lot 8. The trial court granted the injunction, finding as a matter of law that the road would be a “structure” within the meaning of the restrictive covenant and that it “cannot be characterized as residential in nature.” L. W., Inc., appealed from this decree.
The determinative issue is whether the road contemplated by L. W., Inc., constitutes a structure within the meaning of the above-quoted restrictive covenant. The parties have cited decisions closely on point from other jurisdictions which have reached conflicting results. For decisions holding that a roadway across a residential lot violates a restrictive covenant, see, e.g., Hanley v. Misischi, 111 R.I. 233, 302 A.2d 79 (1973); Thompson v. Squibb, 183 So.2d 30 (Fla.App.1966); Rush v. Miller, 21 Wash. App. 156, 584 P.2d 960 (1978), all holding that a road which benefits land outside the subdivision of which the lot in question is a part is not a residential use; and Beyt v. Woodvale Place Apartments, 297 So.2d 448 (La.App.1974), cert. denied, 300 So.2d 840 (La.1974), holding that a “wide hard-surfaced boulevard” is a “structure” and af *738 firming an order that it be removed. For decisions holding that such a roadway does not violate restrictive covenants limiting the lot to residential purposes, see, e.g., Vinyard v. St. Louis County, 399 S.W.2d 99 (Mo.1966), holding that a roadway is not a structure; Bove v. Giebel, 169 Ohio St. 325, 159 N.E.2d 425 (1959), holding that because the restriction on the lot did not limit it to residential use within the subdivision, a road could be built on it to land having the same restrictions as applied within the subdivision; and R. R. Improvement Association v. Thomas, 374 Mich. 175, 131 N.W.2d 920 (1965), following Bove v. Giebel, supra, with the reservation that the complaining residents should be allowed to show that they have non-trivial objections to the roadway. For a general discussion of the subject and citations to other cases, see 25 A.L.R.2d 904 and its later case service.
We agree with the former group of courts that a roadway is a structure and that a lot limited for residential use is limited to residential use within the subdivision of which it is a part. This second point defeats L. W., Inc.’s contention that the proposed road, if held to be a structure, would be a structure “incidental to residential occupancy”; this restriction is intended to apply to structures incidental to residential occupancy of the same lot or perhaps neighboring lots in the same subdivision.
In this case the Trices specifically sought a lot that was not on a corner. Their previous home was on a street corner and they avoided less expensive corner lots in New Country Club Estates to buy Lot 7. Obviously, they relied on the “residential structure” restriction and had no expectation that their neighbors’ lots could be used for a road. On the part of L. W., Inc., it owns the land south of the old Soost estate and has a development plan to build a road which could be extended to the Soost property it now owns. There was some testimony that this access would be more difficult because of a drainage ditch in the area, but the road on the proposed development plan would cross the ditch anyway. L. W., Inc., seems to imply that the Mobile City Planning Commission would not approve this road, but our inspection shows that the Commission’s objection was only to a through street from New Country Club Estates to Lakewood, the development south of the Soost property. A cul-de-sac from Lakewood to the Soost property would not face this objection. Therefore, the record shows that the Trice’s objection is not trivial and the inconvenience to L. W., Inc., is not insurmountable.
Because we agree with the trial court that the proposed roadway is a “structure” as contemplated in the restrictive covenants and that it is not residential in nature, we hold that the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.